## DISTRICT OF COLUMBIA *v.* MOULTON.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 224.   Argued April 9, 10, 1901.—Decided May 27, 1901.

Park street is a public highway in the northwest section of the city of Washington.   For some days before the accident which was the ground of this action, a steam roller had been used in connection with the work of resurfacing the street with macadam.   This roller became disabled, and was placed close to the south curb of the street, a canvas cover was placed over it, and it was left there for two days.   On the second day the horse of the plaintiff in error, being driven along the street, became restive from the flapping of the canvas cover, reared, and upset the vehicle, and threw out the plaintiff, injuring him.   *Held* that the District of Columbia was not liable for the injuries which the plaintiff so suffered.

THIS action was begun by the defendant in error in the Supreme Court of the District of Columbia. In substance he asserted in his declaration a right to recover from the District of Columbia a specified sum, upon the ground that by its negligence, on November 26, 1896, he had sustained serious personal injury. The negligence averred consisted in this, that for a space of two days prior to and including the date named the District had negligently and knowingly left upon a public highway known as Park street a large steam roller, which was calculated to frighten horses of ordinary gentleness; and while plaintiff was driving along said street, with due care, in a carriage drawn by a horse of that disposition, the animal was frightened and rendered unmanageable by the steam roller, and in the struggles of the horse one of the wheels of the carriage was broken, plaintiff was thrown out upon the ground with great force, and he sustained the injuries for which recovery was asked. Defendant filed a plea of the general issue.

The evidence most favorable to the contention of the plaintiff tended to show the following: Park street is a public highway in the northwest section of the city of Washington, commencing at Fourteenth street and running westwardly. For several days prior to the accident in question a steam roller had been used in connection with the work of resurfacing Park street with macadam. This roller was of the kind usually employed in constructing macadamized gravel roads. It had three wheels, the tread of the rear wheel being about eight feet, which was its extreme width. The machine was about eight feet long and about five or six feet high. The smokestack was a little higher than the other part of the machine. While the roller was in use, on the forenoon of the day before the accident hereinafter referred to, it "broke down." The nature of the injury to the roller does not appear, otherwise than as it may be inferred from the fact that the roller was subsequently removed by horse power, that the machinery was simply disabled. On becoming out of order, the roller was placed close to the south curb of Park street, from twenty to fifty feet west of Pine street—a street fifty feet in width—and distant about nine hundred feet westwardly from Fourteenth street. Over

the roller was placed a canvas cover. The roadway proper, at the point where the roller was stationed, was about twenty-eight feet wide, and there was ample room for the passage of vehicles between the roller and the northerly side of Park street.

About 3 o'clock on the afternoon of November 26, 1896, (Thanksgiving Day,) plaintiff drove into Park street from Fourteenth street, and as he did so saw the steam roller. The horse he was driving was one which the plaintiff had owned for several years, was regarded as of an ordinary gentle disposition and had several times been driven safely past steam rollers when they were in actual operation. Plaintiff guided his horse, intending to pass by the roller in the space to the right thereof, but on approaching Pine street the horse became restive—from the flapping of the canvas cover on the roller or from some other cause—and when about opposite the middle of Pine street became unmanageable, reared and upset the vehicle, throwing out and injuring the plaintiff. The evidence also tended to show that other horses in passing the roller had exhibited fear.

The case was tried to a jury, and resulted in a verdict for the plaintiff. On appeal the judgment was affirmed by the Court of Appeals of the District. 15 App. D. C. 363.

*Mr. Andrew B. Duvall* for plaintiff in error. *Mr. Clarence A. Brandenburg* was on his brief.

*Mr. A. S. Worthington* for defendant in error. *Mr. Charles L. Frailey* was on his brief.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

That the District of Columbia is not an insurer of the safety of travelers upon its streets is, of course, unquestioned. This being so, we think the lower courts erred in upholding the liability of the District for the injuries sustained by the plaintiff, under the circumstances disclosed in the record.

The steam roller in question had been brought to the place where the accident occurred for a lawful purpose, viz., that of

performing a duty enjoined upon the District to keep in repair the streets subject to its control. The use of an appliance such as a steam roller was a necessary means to a lawful end—a means essential to the performance of a duty imposed by law. It must, therefore, follow that if in the legitimate and proper use of such machine, with reasonable notice to the public of such use, an injury is occasioned to one of the public, such injury is *damnum absque injuria. Lane* v. *Lewiston,* 91 Maine, 292, 294; *Morton* v. *Frankfort,* 55 Maine, 46; *Cairncross* v. *Pewaukee,* 78 Wisconsin, 66, commenting upon and explaining *Hughes* v. *Fond du Lac,* 73 Wisconsin, 380. Conceding that the roller was an object calculated to frighten horses of ordinary gentleness, yet, at the most, the liability of the municipality for negligently permitting such objects to remain within the limits of a highway, if it exists, must primarily be dependent upon the fact that they are unlawfully upon the highway.

The sole negligence complained of in the declaration was averred to consist in keeping the steam roller in question on Park street for the space of two days so as to be a public nuisance and dangerous to travelers passing along said street with their carriages and horses. There was no allegation that the roller in consequence of its being disabled presented such a changed appearance that the danger of its frightening an animal was enhanced. Nor was there any averment that the negligence was committed in the use of the canvas covering, and no proof was offered on the trial tending to show that such a cover was not the means usually employed to protect steam rollers from the weather when they were lawfully on the street and for the time being not in use.

Where but one inference can reasonably be drawn from the evidence the question of negligence or no negligence is one of law for the court. *Northern Pacific Railroad Co.* v. *Freeman,* 174 U. S. 379, 384; *Metropolitan Railway Co.* v. *Jackson,* 3 App. Cas. 193. It is only where the evidence is such that reasonable men may fairly differ as to the deductions to be drawn therefrom, that the determination of the fact of negligence should be submitted to a jury. *Warner* v. *Baltimore & Ohio Railroad,* 168 U. S. 339, 348. The question which here arises then is,

Did the evidence justify the trial court in permitting the jury to determine whether or not in allowing the disabled roller to remain at the place referred to, under the circumstances stated, the District negligently and unlawfully obstructed the highway?

We shall assume that the period when the steam roller became unserviceable while in use on Park street was the forenoon of the day prior to the accident, as claimed by the plaintiff. The right, however, to use a steam roller upon a public street for the purpose of the repair of such street we think necessarily includes the right to retain the roller upon the street until a reasonable time after the necessity for the use of the machine has terminated, in the meantime exercising due care in the deposit of the machine when not in use and giving due notice and warning to the public of the presence of such machine if travel upon the street is permitted. We can perceive no difference in principle between using and keeping a steam roller on the streets until the completion of a particular work and the maintaining a lawful excavation, such as for the construction of a sewer or of an underground road and the use of an engine, derrick, etc., in connection with the hoisting of earth from an excavation. The appliances used in connection with such excavations, even though calculated to frighten horses of ordinary gentleness not familiar with such objects, undoubtedly may be retained at the place where needed until the necessity therefor has ceased, and the circumstance that such appliances become temporarily disabled cannot, in reason, be held to affect the right of the municipal authorities to keep such machinery on the works until in the ordinary course of events and in the exercise of a reasonable discretion it is found convenient either to there make the needed repairs or to remove the appliances elsewhere for that purpose. Now, the only inference warranted by the record is that when the steam roller in question got out of order it was being used upon the street, and the necessity for its further use continued to exist. Had the machine not broken down, or had needed repairs been made to it at the place where the roller was deposited, it might lawfully have been allowed to remain upon the street while its further use was required, and until it was reasonably convenient to remove it. Under

such a state of facts as has been detailed there was nothing either in the circumstance of the disabling of the machine, or in the detention, warranting the inference that the right to leave the roller upon the street over a legal holiday did not exist, and that an illegal use of the highway had originated. It follows that the facts in evidence respecting the keeping of the roller on Park street during the period referred to did not justify the submission to the jury of the question whether the District was negligent in so keeping the machine, as it could not reasonably have been inferred that the employés of the District were negligent in failing to remove the machine before the occurrence of the accident.

As respects the notice owing to the plaintiff of the presence of the roller, we agree with the opinion of the Supreme Judicial Court of Maine in *Lane* v. *Lewiston, supra,* that where a steam roller is allowed to remain upon a municipal highway it is requisite that the municipality causing the obstruction should give reasonable notice to the traveling public of its presence, but that a view of its obstruction itself in time to avoid it without injury amounts to notice. In other words, as stated by the Maine court, " No one needs notice of what he already knows," and " Knowledge of the danger is equivalent to prior notice." 91 Maine, 296. That the plaintiff had notice of the presence of the roller on Park street in ample time to have avoided it, is undisputed. When he turned from Fourteenth street into Park street it was broad daylight, there was nothing to obstruct his view westward, and in fact he testified that the roller was in plain sight. He was not induced or directed by the agents of the District to proceed past the roller. He knew that such objects sometimes frightened horses, but from his acquaintance with the disposition of his horse he believed that he could control the animal and drive safely past the roller, and he voluntarily undertook to do so. Now, it seems clear—particularly as the danger was neither hidden nor concealed—that the District was under no obligation to restrain the plaintiff from attempting to pass, either by closing Park street or by other means. The District was not bound to presume that it would be *necessarily* hazardous to attempt to drive past the roller, stationary

and quiet as it was, and familiar as horses in a large city usually are to the sight and sounds of electric and cable cars and horse-less motors. The District, at best, was only chargeable with notice that the roller was an object which might frighten some horses of ordinary gentleness, not that it would inevitably do so. It was bound to give sufficient warning to drivers of the presence of the roller in time to enable them to avoid passing it, if desired. The District, however, had a right to assume that a driver of mature age was familiar with the habits and disposition of his horse, and was possessed of the common knowl-edge respecting the tendency of steam rollers to occasionally frighten such animals. The roller being lawfully on the street, the District was not bound to guard against the consequences of a voluntary attempt to drive by this roller. Certainly, if a driver believed that it would not be the natural and proper con-sequence of such an attempt that his safety would be endan-gered, the District ought not to be charged with notice that the attempt would be dangerous either to life or to limb.

The foregoing observations sufficiently indicate the errors committed by the trial court in the instructions given to the jury and in the refusal to give requested instructions, to which exceptions were noted. It suffices to say in conclusion that the trial court erred in refusing to instruct the jury, as requested, that upon the whole evidence in the case their verdict should be for the District. As said by this court, speaking through Mr. Justice Blatchford, in *Schofield* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 114 U. S. 615, 618:

"It is the settled law of this court that, when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Improvement Co.* v. *Munson*, 14 Wall. 442; *Pleasants* v. *Fant*, 22 Wall. 116; *Her-bert* v. *Butler*, 97 U. S. 319; *Bowditch* v. *Boston*, 101 U. S. 16; *Griggs* v. *Houston*, 104 U. S. 553; *Randall* v. *Baltimore & Ohio Railroad Co.*, 109 U. S. 478; *Anderson County Comrs.* v.

*Beal,* 113 U. S. 227; *Baylis* v. *Travelers' Insurance Co.,* 113 U. S. 316."

*The judgment of the Court of Appeals of the District of Columbia is reversed, with instructions to that court to reverse the judgment of the Supreme Court of the District of Columbia, and to grant a new trial.*