WEBSTER v. CHICAGO, B. & Q. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1907.)

No. 2,590.

1. RAILROADS—HIGHWAY CROSSINGS—MUTUAL RIGHTS OF RAILROAD AND PUBLIC.

By a grant of a right of way to a railroad company, through the exercise of the right of eminent domain or otherwise, to lay its tracks and operate its road across an established highway, the state has necessarily declared that the use of the highway for these purposes is a public use consistent with the other uses to which it is ordinarily subject in favor of the traveling public; neither the public nor the railroad company has the paramount right in such use, but each may use the portion of the highway affected by the grant for all proper purposes subject to proper consideration for the concurrent rights of the other.

2. SAME—FRIGHTENING ANIMALS—REMOVAL OF HAND CAR UPON HIGHWAY.

The removal of a hand car from a railroad track upon a highway at a crossing, for a sufficient time to permit the passing of an approaching

158 F.—49

train, by a section foreman who was using such °car in the course of his duty, was a reasonable and permissible use of the highway incidental to the enjoyment by the railroad company of the right to operate its road over the same, and not an invasion of the rights of the general public, and created no liability on the part of the railroad company for the injury of a traveler on the highway whose horse became frightened at the hand car.

In Error to the Circuit Court of the United States for the Western District of Missouri.

J. H. Harkless (W. J. Nelson, Beardsley, Gregory & Kirshner, and Harkless, Crysler & Histed, on the brief), for plaintiff in error.

Hale Holden (O. H. Dean, W. D. McLeod, H. C. Timmonds, James E. Kelby, and J. W. Deweese, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. The record discloses the following brief and undisputed facts: Plaintiff's horse was frightened by a hand car which the section foreman of defendant company had been using in the discharge of his duties, and which he had removed from the rails at a street crossing and temporarily allowed to stand within the limits of the highway, which was also defendant's right of way, while a train running over his section passed. The derailing of the hand car was occasioned by the approach of a train, and no claim is made that it was derailed any too soon to avoid collision. Plaintiff was driving along the highway in the direction of the crossing and reached it just after the hand car had been derailed and just before the train passed. As a result of her horse's fright, she was injured, and subsequently brought this suit in the court below for damages alleged to have been occasioned by defendant's negligence in leaving the hand car on the street and thereby exposing her to danger. It resulted in an instructed verdict in favor of defendant, and this writ of error is prosecuted by plaintiff.

The only question necessary for consideration is whether the Circuit Court erred in directing the verdict. This depends upon whether there was any substantial evidence of negligence in the case. Plaintiff's counsel contend that the highway was for the use of the general public; that it was not a permissible place for conducting the operations of the railway company; that defendant unlawfully obstructed it be derailing the hand car and leaving it there while the train passed by, and is responsible for the natural consequences of its unlawful act; among them, the frightening of horses of ordinary gentleness and the injury resulting therefrom. This contention involves a consideration of the relative rights of a railroad company and the traveling public to the use of that part of the highway which intersects the right of way of the former.

An argument is made in favor of the plaintiff on the assumption that the rights of the railway company in cases like this are subordinate to the rights of the traveling public. Is this assumption correct? By the grant of a right of way to the railway company through the exercise of the right of eminent domain or otherwise to lay its tracks and operate its road across an established highway, the state has neces-

sarily declared that the use of the highway for these purposes is a public use consistent with the other uses to which the highway is ordinarily subject in favor of the traveling public. Both the railway company and the public may use the highway for their respective and appropriate purposes. The traveling public, whether driving, riding, or afoot, may use it therefor and for all other necessarily incident purposes. The traveler is not a trespasser when crossing the railway tracks at a public crossing on the highway, but is exercising an undoubted personal right. So, too, the railway company, whether in propelling a train of cars or a hand car over its tracks on the highway, repairing its tracks or doing any other thing requisite and necessary for the proper conduct of its business at that place is not a trespasser, but is exercising its lawful right. Instead of one having a right paramount to the other, the rights of each are of equal dignity as far as they go, and must be enjoyed subject to the embarrassment, if any, which the exercise by the other of his rights creates. Each is entitled to the use of the street for the legitimate purposes of its business, subject always to proper consideration for the concurrent rights of the other.

In Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496, the Supreme Court of Pennsylvania observed concerning the subject now under consideration:

"There is a certain right of property owners, which we will discuss presently, to leave objects on or along a highway, in front of their premises, temporarily, and for special purposes, and where that right exists, it is of equal grade, before the law, with the right of travelers to journey on the highway. * * * As we understand the law there is an absolute right in a property owner to use a portion of the public highway for certain purposes for a temporary period and in a reasonable manner, and this right may be exercised in derogation of the right of the traveling public."

In Loberg v. Town of Amherst, 87 Wis. 634, 58 N. W. 1048, 41 Am. St. Rep. 69, which was an action for damages alleged to have accrued to the plaintiff by the fright of his horse occasioned by mortar boxes obstructing the street in front of a residence owned by the defendant, which he had been using for plastering his house, the Supreme Court of Wisconsin observed:

"He" [the owner] "had a right to use temporarily a reasonable portion of the street for the deposit of the mortar boxes, etc., while necessarily used in plastering his house. This right is born of necessity and justified by it. * * * As fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time; and, because building is necessary, materials proper and adapted to that purpose may be placed in the street, provided it be done in the most convenient manner; and so, as to the repairing of a house, the public must submit to the inconvenience necessarily incident thereto, but, if prolonged for an unreasonable time, such use of the street becomes unlawful."

In Golden v. Railway Co., 84 Mo. App. 59, the railway company was engaged in repairing a bridge over its tracks. Old boards had been taken out and piled on the side of the highway within a few feet of the traveled track. Plaintiff's horse driven on the highway toward the pile of lumber was frightened by it, and he was injured. The court said:

"We recognize that a public highway or street is not exclusively for travel thereon; that they may be used temporarily, for placing material and for other purposes connected with the adjoining property."

In District of Columbia v. Moulton, 182 U. S. 576, 21 Sup. Ct. 840, 45 L. Ed. 1237, a steam roller had been employed to keep streets in repair. The court said:

"The use of an appliance such as a steam roller was a necessary means to a lawful end—a means essential to the performance of a duty imposed by law. It must therefore follow that, if in the legitimate and proper use of such machine, with reasonable notice to the public of such use, an injury is occasioned to one of the public, such injury is damnum absque injuria."

Judge Dillon in his work on Municipal Corporations (4th Ed.) vol. 2, § 730, lays down the general doctrine as follows:

"It is not every obstruction, irrespective of its character or purpose, that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations and restrictions. The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in a temporary obstruction to the right of public transit. So the improvement of the street or public highway itself may occasion impediments to its uninterrupted use by the public. And so of the improvement of adjoining lots by digging cellars, by building, etc.; this may occasion a reasonable necessity for using a part of the street or sidewalk for the deposit of material. Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to or limitations of it. They can be justified when, and only so long as, they are reasonably necessary."

To this text, he cites many cases to which reference is called. See, to the same effect, Jones v. Railroad Co., 169 Pa. 333, 32 Atl. 535, 47 Am. St. Rep. 916; Farrell v. Oldtown, 69 Me. 72; Nichols v. Athens, 66 Me. 402; Howard v. Union Freight Railroad, 156 Mass. 159, 30 N. E. 479.

In view of the principles enunciated above, the question decisive of this case is whether the use of the highway by the section foreman, as and in the circumstances disclosed by the record, is one of the uses incidental to the enjoyment of the conceded right of the railway company to operate its tracks across the highway. If so, it was no invasion of the easement belonging to the general public but only a limitation of it. Hand cars propelled on the tracks of a railroad company afford the usual, customary, and appropriate means for the locomotion of the section foreman in the discharge of his duty over his section of the road. He carries in them his tools and supplies for repairing the road, and they must of necessity be removed from the tracks whenever and wherever a train approaches them. It follows from these facts, in our opinion, that the right of lodgment of the hand car whenever occasion requires its removal is necessarily implied in the grant to operate a railroad, and is a necessary incident to the enjoyment of the grant. Such being the case, when that lodgment is reasonably required to be made and is made on the highway it is not an unlawful obstruction, and does not ipso facto confer a right of action upon one whose horse is frightened by it. On the contrary, it is a consistent and permissible use of the highway for a time reasonably sufficient to enable the train to pass and the operator to restore the hand car to the

tracks. The record makes it very clear that the hand car in question was not removed until common prudence demanded its removal. The train was in sight, and the highway then just reached by the section foreman operating the hand car, presented a level and convenient place to derail it. Indeed, there is no evidence that any other place in the near proximity was as suitable or convenient for that purpose as it, and there is no evidence that the foreman did not exercise reasonable care in derailing it, provided he had a lawful right to do so at that time and place. The case of Ohio & Mississippi Ry. Co. v. Trowbridge, 126 Ind. 391, 26 N. E. 64, relied on by plaintiff's counsel, does not disclose that the hand car involved in that case was left on the highway for any purpose incidental to the defendant's business. It is true the Supreme Court of Indiana said:

"The right of using a highway for the storage of cars, or even as a place for the temporary deposit of cars, is not possessed by any railroad company."

But it immediately added:

"Possibly an emergency might arise excusing, or justifying, the temporary use of a highway for such a purpose. * * * The act of the appellant in placing the hand car on the highway was, in this instance, unlawful, and calls for an explanation from the authors of the wrong. We find no satisfactory explanation nor any reasonable excuse in the facts exhibited by the answers to special interrogatories."

We cannot doubt that if the emergency which confronted the section foreman in this case had appeared to the Supreme Court of Indiana it would have regarded it as an emergency which justified a reasonably brief obstruction of the street. In Railway Co. v. Bridges, 16 Tex. Civ. App. 64, 40 S. W. 536, also relied on by plaintiff's counsel, there is no showing that the hand car was deposited in the highway in the line of business or because of any pressing emergency. On the contrary, the language of the court excludes that possibility. It said:

"The use of the track by the appellant in no way required that the hand car should be thus operated."

Railway Co. v. Williams, 56 Kan. 333, 43 Pac. 246, is also a case which sanctions the obstruction of a highway by a railroad company for a necessary and reasonable purpose.

Without particularly referring to any of the other numerous cases which the industry of counsel has brought to our attention, it suffices to say that we find in none of them any doctrine which militates against that of the cases first cited by us when applied to facts of the kind disclosed by this record.

The vigorous contention of counsel that the case should have been submitted to the jury for its consideration and determination is clearly without merit. There was nothing for a jury to pass on. The controlling facts were undisputed and a question of law only was presented, namely, whether on those facts a legal liability arose against the defendant for plaintiff's injury. The learned trial judge in the exercise of his undoubted function and in the discharge of a duty properly belonging to him held that no such liability arose out of the facts. In doing so, he committed no error and the judgment is accordingly affirmed.