## MIDDLETON v. P. SANFORD ROSS, Inc.

(District Court, S. D. Georgia, E. D. February 24, 1913.)

1. MASTER AND SERVANT (§ 107*)—DEATH OF SERVANT—SAFE PLACE—DANGER FROM WORK OF OTHER LABORERS.

> While a master is bound to furnish a reasonably safe place where all the workmen engaged in the work may labor, yet, having done so, the master is not bound to anticipate and assume liability for damages that result from the negligence of other laborers on the work rendering the place unsafe and resulting in the death of one employed on the work whether they are fellow servants in a strict sense or not, especially where the deceased had a better opportunity than the master to perceive the danger and avoid it.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 217*)—DEATH OF SERVANT—ASSUMED RISK.

 Where decedent while working at the reinstallation of an engine on a dredge was struck and killed by a timber which was being pulled from beneath the engine, and decedent saw the exertion of power from an engine to pull out the timber and must have known that the work was dangerous, and could easily have removed himself to a safe place, he assumed the risk.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

At Law. Action by Annie Middleton against P. Sanford Ross, Incorporated. On demurrer to petition. Sustained.

Osborne & Lawrence and Edmund H. Abrahams, all of Savannah, Ga., for complainant.

Garrard & Gazan, of Savannah, Ga., for defendant.

SPEER, District Judge. This is an action brought by Annie Middleton for the death of her husband. P. Sanford Ross, Inc., was engaged in rebuilding one of its dredges at a wharf at the foot of Barnard street, in the Savannah river. The work was being done under the direction of the defendant company, and workmen of various trades were engaged. Among these was a machinist, the late husband of the plaintiff, who was in the service of John Rourke & Sons. Middleton was working at the reinstallation of the engine. It was necessary to house over the dredge, and upright posts had been installed along its side and on the deck at intervals of about 20 feet apart. In the process of construction beams were laid crosswise the dredge. All this was done to make what is known as the "hog frame." There were on the top of the uprights connecting timbers running fore and aft, and on these the cross-beams were laid. About 20 feet aft of the spot where the engines were being reinstalled and where Middleton was at work there were two of these uprights and a cross-beam lying athwart the dredge. Nothing was completed. The cross-pieces had not been permanently placed and bolted. A steam hoisting engine with derrick and fall attached was on the dock. The derrick was movable, and swung over the dredge. In the course of the work, it became necessary to remove a stick of timber on which the engine was resting. This timber was 14 feet by 14 feet and 25 inches in length. The wire cable was run from the derrick boom and fastened around the timber underneath the engine, but was not fastened to the middle of the timber. When the power was applied and the timber brought above deck, one end sagged down, and the shorter end projected upward. While doing this work, this timber got loose from the control of the men engaged in handling it. It struck the cross-beam, knocked the same from its position, and in falling it inflicted a blow upon Middleton from which he died. While working on the dredge, Middleton was not engaged in the actual work of removing the timber. This was being done by other servants and employés of defendant. When the work of removing the timber from beneath the engine commenced, Middleton walked from the place where he was engaged, and was standing on the side of the dredge about 15 or 20 feet away in what, it is alleged,

was apparently a safe place. It is further alleged that this was a safe place. This did not turn out to be true, however, because there he received the blow from which his death resulted.

The grounds of negligence are that defendant failed to provide a safe place of work on board the dredge; that it failed to fasten both ends of the cross-beam before the removal of the piece of timber; that it failed to warn Middleton of this failure to fasten and bolt the ends of the cross-beam; that it permitted the cross-beam to lie on the top of the upright post without fastening or support of any kind; that it negligently and carelessly removed the timber from beneath the engine; that it failed to fasten the cable in the middle of this timber and equalize the weight so as to prevent the slipping thereof (however, no slipping is alleged); that it failed to provide a safe means of removal of the timber from beneath the engine bed; that it failed to provide a safe method of controlling the weight of the timber after it was brought above the deck of the dredge and to adopt proper precautions to prevent it striking the cross-beam; that it allowed the stick of timber to which the hawser was attached to strike such cross-beam.

[1] There are several difficulties in the way of the plaintiff's right to recover which are suggested by the demurrer, the argument thereon, and subsequent reflection. It is, of course, true that the owner of the dredge was under obligations to furnish a reasonably safe place where all the workmen engaged in its construction might work. Having done this, the master is not unreasonably called upon to anticipate and become liable for damages which resulted from the negligence of laborers on the work, whether they were in a strict sense fellow servants or not. This is particularly true where, as in this case, the deceased had even more opportunity than the master to perceive the danger and would have avoided it even if he had stayed on the spot where he was obliged to work himself.

[2] The description of the dredge and its condition as presented in the plaintiff's declaration makes this perfectly clear. Any one can see that the 12-inch beam superimposed on the stringers running fore and aft the dredge was not fastened down. Any one could see, and it is not denied that the deceased did see, the exertion of power put forth by means of the donkey engine, the derrick and fall rope to pull out the timber from under the engine and to remove it to another place. There is no denial that the deceased had the opportunity to see and know these facts. They must have been obvious to him. That there was risk about it is true, but it was a risk which he, in the very nature of the undertaking, had assumed. The dredge was in process of construction. The conditions were changing with the progress of the work. Most of the instrumentalities were ponderous, and, if not handled by other workmen with care, were likely to be destructive.

The rule announced under these conditions may be found in the case of Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440. The pertinence of the precedent may be readily gathered from the following language of Mr. Justice Gray, speaking for the court:

"This court is of the opinion that the Circuit Court erred in not rendering judgment for the defendant on his demurrer to the plaintiff's evidence. There was no evidence tending to prove any negligence on the part of the firm of

which the defendant was a member, or of their superintendent, or of the foreman of the gang of carpenters. The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as 'its safety depends upon the due performance of that work by them and their fellows."

Speaking further of the stick of timber which in that case caused the injury, the learned justice says:

"If it was at the time insecure, it was either by reason of the risks ordinarily incident to the state of things in the unfinished condition of the building, or else by reason of some negligence of one of the carpenters or bricklayers, all of whom' were employed and paid by the same master, and were working in the course of their employment at the same place and time, with an immediate common object, the erection of the building, and therefore, within the strictest limits of the rule of law upon the subject, fellow servants, one of whom cannot maintain an action for injuries caused by the negligence of another against their common master."

In addition to this, while the duty of construction and provision of a suitable place for work is upon the master, the duty of operation and of protection from negligent use is the servant's. This was fully set forth in the case of Kreigh v. Westinghouse (C. C. A. 8th Circuit) 152 Fed. 120, 81 C. C. A. 338, 11 L. R. A. (N. S.) 684, decision rendered by Sanborn, Hook, and Adams. There, too, a derrick was in use, and its negligent operation, as in this case, was alleged to have produced the injury.

"The rule of safe place is inapplicable to this case. The duty of construction and provision is the master's. The duty of operation and protection from negligent use is the servant's. The .duty of so using a reasonably safe place and of so operating a reasonably safe machine that neither the place nor the machine shall become dangerous by their negligent use or operation is the duty of the servants to whom the use or operation is intrusted, and it is not .any part of the positive duty of the master. The duty of caring for the safety of a place or of machinery in cases in which the work which the servants are employed to do necessarily changes the character of the place or of the machinery as to safety as the work progresses is the duty of the servants to whom the work is intrusted, and it is not the duty of the master"—citing American Bridge Company v. Seeds, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041.

The case last cited seems very instructive on this topic. There a bridge was in process of construction. There as here, a swinging load was attached to a snub line. The court holds:

"There is no duty imposed upon a master to anticipate breaches of duty on the part of his servants, but he may lawfully reckon the natural and probable results of his actions upon the supposition that his servants will obey the law and faithfully discharge their duties. The legal presumption is that they will do so, and this is the only practicable basis for the measurement of the acts, rights, or remedies of mankind"—citing many cases.

The court continues:

"The independent voluntary act of the foreman who gave the reckless signal which sent the iron chords against the plaintiff and knocked him off the bridge was a breach of his duty incapable of anticipation. * * * It is the duty of the master to use ordinary care to furnish reasonably safe machinery and instrumentalities with which his servants may perform their

work, and a reasonably safe place in which they may render their service, and this duty may not be so delegated by him that he may escape liability for its breach. Nevertheless, this duty has its rational and legal limit. It does not extend to the guarding of ·the safety of a place or of a machine against its negligent use by the servants. The risk that a safe place will become unsafe, or that safe machinery will become dangerous, by the negligence of the servants who use them, is one of the ordinary risks of the employment which the servants necessarily assume when they accept it. It is a risk of operation and not of construction or provision, and the duty to protect place and machinery from dangers arising. from negligence in their use is a duty of the servants who use them, and not that of the master who furnishes them."

It is true that the question of negligence is generally for the jury, but, where but one inference can reasonably be drawn from the evidence, the question of negligence or no negligence is one of law for the court. District of Columbia v. Moulton, 182 U. S. 579, 21 Sup. Ct. 840, 45 L. Ed. 1237, and cases cited.

While the court has sincere sympathy for the widow who has been so distressingly bereft of her husband, and doubtless of her means of support, by this accident, our judgment must be controlled by the principles stated. In short, the case does not seem to differ from one where a home builder might have made contracts with various persons to erect his house. Bricklayers, carpenters, roofers, an engineman we will say who runs a gasoline engine and a ripsaw, and others are engaged in the structure. The fellow laborers, whether fellow servants or not, negligently handle the various instrumentalities used in the changing and progressing construction, and one is hurt. In such a case the injury is not that of the owner. The proximate çause is the negligence of the fellow laborer. Whether he is in strict law a fellow servant or not it matters not.

The demurrer must be sustained.