CAVANAGH, J.
(dissenting). Michigan consumers beware: If you know or should know that there is any material risk from using or accidentally misusing the product you buy, then the manufacturer of that product now has no duty to warn you of any risk at all, even when the potential harm you knew of is not the harm you ultimately suffer. Stated differently, if you know or should know that if, for example, you accidentally drink or inhale a product, you may become ill, then you are charged with knowing that if you accidentally drink or inhale that product, you could die. And the manufac *516 turer need not warn you of either of those risks — illness or death. According to the majority, the obviousness of any material risk, such as that of illness, is identical to and has the same effect on your behavior as the obviousness of all risks, including death.
To cut right to the core of the majority’s faulty reasoning, the majority completely misreads MCL 600.2948(2), and, in doing so, reaches the erroneous conclusion that obviousness of one risk means obviousness of all risks. The governing statute states:
A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action. [Id,.]
The majority ignores key words and basic grammatical structure. Specifically, the Legislature used the word “a” in the phrase “a material risk,” thus directing its mandate toward that particular risk. “A” is an “[indefinite article functioning as an adjective” and is “[u]sed before nouns and noun phrases that denote a single, but unspecified, person or thing[.]” The American Heritage Dictionary, New College Edition (1981). Notably, then, the word that “a” precedes is limited to “a single” noun. Thus, in this case, “a material risk” refers to “a single,” or one, material risk. As a result, the otherwise unspecified single material risk to which the statute refers must be identified before it can be determined whether that risk was common knowledge or obvious to a reasonably prudent product user.
But the majority ignores the word “a,” fails to correctly identify the material risk at issue, and writes the word “obvious” completely out of the statute. In doing so, the majority erroneously concludes that all *517 risks are obvious as long as some risk is obvious. Accordingly, the majority holds that the alleged obviousness of “any” material risk absolves a manufacturer from warning about “all” material risks, even if other material risks are not obvious. The effect on this case is the result that because a reasonably prudent product user would have purportedly known that there was a risk of illness from misusing the Wonder 8 Hair Oil, plaintiff should have known there was a risk of death. Therefore, defendants had no duty to warn their consumers about any risk at all.
By concluding this way, the majority rewrites the statute and, consequently, fails to effectuate the protections the Legislature intended. Had the Legislature intended what the majority holds, it would have written the statute as follows: “A defendant is not liable for failure to warn of any material risk when a material risk should be obvious to a reasonably prudent product user____” Or it would have stated, “A defendant need not warn about all material risks if one material risk should be obvious to a reasonably prudent product user----” Plainly, it did not write the statute that way, and the majority errs by ignoring the unambiguous language. [1]
To determine in what instances a manufacturer will have no duty to place a warning on its product and what *518 exactly it must warn about, it must first be determined what the “material risk” is alleged to be. [2] By the majority’s own proffered definition, “material” means “ ‘important: to make a material difference; pertinent: a material question.’ ” Ante at 510, quoting Random House Webster’s College Dictionary (1997). The first question, then, is “In what must the material difference be made?” According the word its common meaning in the context in which it is used, for the risk to be “material,” it must make an important or pertinent difference in the consumer’s actions with respect to the product. For instance, the risk would be material if it would bear on whether the consumer purchases the product or how the user deals with the product after purchasing it. Thus, if, to require a warning, the risk must be an important one that makes a material difference in the user’s actions, and it must be obvious as well, then the risk involved must be identified. Otherwise, there is no way to determine whether the risk is obvious and no way to determine whether it would make some “material difference.”
So it is clear from the statutory language that all risks are not equal, for one is likely to act differently depending on the risk involved. Simply stated, even *519 assuming that a reasonably prudent product user would know that there was a risk of becoming ill from a product, this same consumer does not necessarily know that there is a risk of death. It is not enough to equate two different risks and charge the consumer with knowledge of the more serious one if he has knowledge of the one less serious because it is unreasonable to assume that a reasonably prudent product user would act the same in both circumstances. Thus, the risk of illness, if found to be “a” material risk, must be considered separately from other material risks, such as death. In other words, because the statute states that a manufacturer has no duty “to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position,” MCL 600.2948(2), the question becomes whether knowledge of the risk of death would have caused the person to act differently, making it a “material” risk, and, if so, whether that risk was or should have been “obvious.” We can determine neither whether a risk was “material” nor whether it was obvious unless we know what the risk is alleged to be.[3]
By alternatively failing to identify the material risk at issue in this case and mislabeling the risk as “ingesting or inhaling” the oil, the majority prevents the statute from operating as the Legislature intended and deprives Michigan consumers of their right to assess levels of risk when making purchasing decisions. The majority seems to try to hide its incomplete analysis by *520 repeatedly asserting that the product posed “a material risk,” because, though that refrain recurs numerous times, the majority either does not name the “material risk” that was supposed to have been obvious or it misidentifies it. Consider the following: “Because the material risk associated with ingesting and inhaling Wonder 8 Hair Oil, as occurred here, would have been obvious to a reasonably prudent product user, the failure to warn against the risk is not actionable.” Ante at 504. “We conclude that it is obvious to a reasonably prudent product user that a material risk is involved with ingesting and inhaling Wonder 8 Hair Oil.” Id. at 511-512. “[W]e find it noteworthy that plaintiff herself demonstrated an understanding that Wonder 8 Hair Oil posed a material risk if ingested. We believe it would also be obvious to a reasonably prudent [product] user that ingestion and inhalation of the product poses a material risk.” Id. at 512. “It should be obvious to a reasonably prudent product user that many oils, although natural, pose a material risk if ingested or inhaled.” Id. “A reasonably prudent product user would also know that ingesting such things as crude oil or linseed oil poses a material risk ....” Id. “It should be obvious to a reasonably prudent product user that ingesting paraffin oil poses a material risk since paraffin is commonly associated with such things as wax.” Id. “Given such unfamiliar ingredients, a reasonably prudent product user would be, or should be, loath to ingest it.”[4] Id. “[W]e hold that defendants owed no duty to warn plaintiff that her son’s ingestion and inhalation of the Wonder 8 Hair Oil posed a material risk.” Id. at 513. “The material risk of harm associated with ingesting *521 and inhaling Wonder 8 Hair Oil is obvious to a reasonably prudent product user.” Id. at 515.
The inconsistencies are self-evident. On one hand, the majority claims that the material risk is “ingesting or inhaling” the product. On the other, the majority asserts that ingesting or inhaling this product poses a material risk, which risk is unidentified. Neither conclusion squares with a plain reading of the statute.
Ingesting or inhaling a product is not the material risk in question. That would make no sense at all because a warning that the product could be accidentally ingested or inhaled does not reveal the specific risk involved with ingesting or inhaling and, thus, does not allow a person to assess the risk and act accordingly. So the risk that must be warned about is not ingestion or inhalation itself.[5]
Rather, ingesting or inhaling is a misuse of the product, and the risk posed by that misuse — the one that must be warned of if not obvious — is the consequence of that misuse, i.e., the consequence of ingestion or inhalation. As such, each risk must be identified, assessed for materiality (whether that risk would affect a reasonably prudent product user’s actions), and assessed for obviousness. The majority fails at each of these tasks.
This leads to another of the majority opinion’s shortcomings: its assumption that knowledge of one risk is knowledge of all. The majority’s erroneous conclusion is inconsistent with the plain language of the statute, which speaks of “a” material risk. As two of the defendants aptly explained in their brief, “No one needs to be told what is already known,” citing Dist of *522 Columbia v Moulton, 182 US 576, 581; 21 S Ct 840; 45 L Ed 1237 (1901).[6] See also Glittenberg v Doughboy Recreational Industries (On Rehearing), 441 Mich 379, 391; 491 NW2d 208 (1992). Thus, if a risk, such as illness, is “material,” and if someone knows or should know that risk, then that person need not be warned of it. But that says nothing regarding whether that person knows of a different risk, here, the risk of death. Defendants did not need to warn of the risk of death only if a reasonably prudent product user would have already known of it because a person need not be told what he or she already knows.
In this case, then, to absolve defendants from liability, it must be shown that a reasonably prudent product user would or should have known of the specific material risk the product posed or that that material risk was common knowledge. Even assuming that a reasonably prudent product user would or should have known that inhaling or ingesting Wonder 8 Hair Oil posed a risk of illness, plaintiff raised a genuine issue of material fact regarding whether the user would have known that inhaling or ingesting Wonder 8 Hair Oil posed the risk of death and whether the same was common knowledge. Thus, it cannot be concluded as a matter of law that the manufacturer had no need to attach any warnings to this product merely because a reasonable person might know that the product could make one sick. The risks of illness and death simply do not have the same level of materiality because reasonably prudent product users will most likely act differently in each instance.
*523 In affirming the grant of summary disposition for defendants, the majority allows manufacturers to keep consumers ignorant of hidden dangers, i.e., material risks, posed by their products. Consider other common household or health and beauty products. For example, a hair spray bottle may warn that spraying the product in the user’s eyes could cause irritation and instruct the user to rinse the eyes thoroughly for 15 minutes should that misuse occur. This information would likely cause the consumer to employ a specifically tailored level of care based on the potential risk of eye irritation. But if that product could also cause blindness, a very different material risk is at play. Knowledge of the material risk of irritation, be it from a warning or from common knowledge, is not knowledge of the risk of blindness. The two risks do not have the same level of materiality because the two risks would likely cause a consumer to make drastically different decisions with regard to the product. In other words, while the risk of eye irritation is a material one because it would cause a user to employ one specific level of care, the risk of blindness is quite another material risk indeed, and one that would likely significantly alter the user’s decision-making process. Thus, each is “a material risk” that must be assessed independently. If the material risk of blindness cannot be said to be obvious, even if the material risk of irritation can, then hairspray that could cause blindness would require a warning to that effect.[7]
The same can be said for a tube of toothpaste, to use an example provided by plaintiff. If reasonably prudent product users could be said to assume that eating the *524 contents of a tube of toothpaste would cause an upset stomach, for instance, then becoming sick from ingesting the toothpaste would be an obvious risk requiring no warning. Toothpaste is routinely left on countertops, despite that consumers presumably understand that there may be a slight risk if a child ingests it. That risk is known and assessed, and the consumer acts accordingly. But assume that the toothpaste could actually kill a child if ingested. Presumably, the toothpaste would be treated quite differently. If that consequence were widely known or if toothpaste tubes carried a warning that swallowing the contents could be fatal, then consumers would most probably act differently by either seeking a different product or by keeping the toothpaste under lock and key. Yet under the majority’s reasoning, as long as the user knows of some material risk, all material risks are deemed known.
In charging consumers with knowledge of hidden dangers, the majority completely writes the word “obvious” out of the statute. As such, warnings that spraying hairspray into one’s eyes may cause blindness, that swallowing toothpaste may cause death, or that inhaling hair oil could prove fatal are not required. Under today’s opinion, manufacturers need not alert consumers of hidden risks or allow consumers to assess those risks and make informed choices. Rather, knowledge of one material risk is knowledge of all.
An opposite conclusion does not necessarily mean that a manufacturer must warn of the specific medical consequences of misusing the product.[8] For instance, in *525 this case, the label did not need to state that the product, if inhaled, could cause “multisystem organ failure secondary to chemical pneumonitis,” which is the medical consequence the product caused the child in this case. Rather, it is enough that a warning speak in general terms, as long as the particular material risk that is not obvious to the reasonably prudent product user is revealed. So in this case, the manufacturer could have simply warned, as multitudes of manufacturers do, that the product could be fatal if inhaled or ingested.[9]
A consumer has a legislatively given right to rely on product labeling in making purchasing decisions, and when a label does not warn of a material risk such as death, the consumer has a right to assume that the product does not pose that risk. By wording the statute *526 the way it did, the Legislature attempted to ensure a consumer’s ability to make an informed decision regarding whether to buy the product and how to handle the product after purchase. But warning of one risk is not warning of all, and the lack of warning of an obvious risk, such as illness, is not a warning of a hidden risk, such as death. By its clear words, the Legislature deemed it unnecessary for a manufacturer to warn of “a” material risk, e.g., illness, when that risk is obvious, but it in no way obviated the need to warn of a different material risk, i.e., death, that is hidden. Yet, after today, manufacturers need warn of nothing, as long as a consumer should know that something could happen as a result of misusing a product.
Thus, all hidden and unknown risks are now relegated to the realm of “common knowledge,” and consumers must play a guessing game with the biggest risk being that their guess turns out to be fatal. Despite being given one by the Legislature, consumers now have no right to know of hidden risks that would have changed their decision-making process regarding the products they choose to buy.
For these reasons, I concur with Justice Kelly that plaintiff presented a genuine issue of material fact with respect to whether a reasonably prudent product user would have known that ingesting or inhaling Wonder 8 Hair Oil could prove fatal. This Court gravely errs by rewriting the law of products liability clearly set forth by the Legislature and thereby depriving plaintiff of an opportunity to seek redress for the death of her child. As such, I respectfully dissent.

 This is interesting in light of the majority’s self-described inexorable adhesion to the categorical interpretation of words such as “a” and “the.” See e.g., Robinson v Detroit, 462 Mich 439, 458-459; 613 NW2d 307 (2000); Massey v Mandell, 462 Mich 375, 382 n 5; 614 NW2d 70 (2000). I have consistently maintained that the words “a” and “the” must be read in context and not in rigid isolation. For example, in Robinson, I joined Justice Kelly’s dissent, which recognized the dictionary meanings of the words but would have also recognized that in that particular instance, “the proximate cause” had several possible meanings when considered in light of governing causation principles.
The majority’s unbending faithfulness to reading the word “a” flounders in this case. Interestingly, under either an isolationist view or *518 a contextual one, the result is the same: “a” material risk can mean nothing other than the material risk of which a plaintiff claims she had no warning.

 In most, if not all, instances, a plaintiff will be the first to identify the material risk when the plaintiff sues, complaining that he or she was not warned of that particular material risk. The defendant will then affirmatively defend by asserting that the material risk the plaintiff claims was not warned of was obvious or common knowledge. In this instance, plaintiff alleges that she was not warned that ingesting or inhaling the product could be fatal. It makes no sense to say that defendant can defend that it warned of some other material risk or that some other material risk was obvious.

 Although this is not a subjective inquiry, it is worth noting plaintiffs testimony that she assumed this product could cause illness if misused but that she would not have bought the product if she had known or been warned that the product would cause death. In other words, the risk of death was a material risk because it would have caused plaintiff to act differently with respect to this product.

 Of course, whether one is “loath to ingest” a product is not the test. Many people would be “loath to ingest” castor oil or Play-Doh, but that says nothing about whether those products pose a material risk if ingested.

 Notably, though, under the majority’s apparent conclusion that inhalation or ingestion is the risk, that risk is obvious, so no -warning is needed at all — not even, “Do not ingest or inhale.”

 The Moulton Court examined whether, when a steamroller was left on the street in plain view, the plaintiff needed to be warned of its presence so that his horses would not be frightened by it.

 It should again be noted that if the risk of eye irritation could be said to he obvious to the reasonably prudent product user, the majority would require no warning on the label, even if spraying it in the eyes might cause blindness, because knowledge of the material risk of eye irritation is knowledge of the material risk of blindness.

 The majority’s reliance on Glittenberg is misplaced. There, this Court’s analysis was governed by the common law. In contrast, this case is governed by MCL 600.2948, which, as the majority itself notes, “displaced the common law.” Ante at 507-508. A number of the majority’s statements in Glittenberg did not survive the enactment of MCL 600.2948. Particularly, its analysis was largely, if not entirely, informed by *525 the principles surrounding simple tools and products, which principles were not incorporated into the statutory enactments. The majority ignores these facts and continues to attempt to graft common-law principles onto the statutory provision at issue. For instance, the majority asserts that had the Legislature “intended to require a defendant to warn of specific dangers, it would have explicitly mandated that alteration in MCL 600.2948(2).” Ante at 511 n 11. But the Legislature did explicitly mandate that. After Glittenberg, the Legislature explicitly mandated that a manufacturer warn of any “material” risk that is not obvious to the reasonably prudent product user. When the term “material” is given meaning, it is clear that the Legislature intended that a manufacturer warn of any danger that would cause a consumer to behave differently with respect to the product. The majority tries desperately to find a way around this simple truth, but it can do so only by a misplaced reliance on outdated concepts.

 The majority’s opinion is frighteningly far-reaching. For instance, one wonders whether manufacturers of toxic household products, such as bleach or ammonia, need no longer place any warnings on their products. I think this is the result because the majority would most likely conclude that anyone would know that accidentally drinking these products would cause illness. Thus, no warning that the products are fatal if ingested would be needed. Consumer protection has certainly taken two steps back today.