(33 App. Div. 98.)

### PEOPLE v. GAYNOR.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. EVIDENCE—OPINIONS OF NONEXPERTS AS TO INTOXICATION.
  The conclusion of an observer is admissible to show whether a person was intoxicated at a given time.

2. CRIMINAL LAW—INTOXICATION—EVIDENCE—RELEVANCY.
  Evidence of the intoxication of defendant a few days before and leading up to the day of the commission of the alleged crime may be admitted, as bearing on the question of his condition on that day.

3. GRAND LARCENY—ELEMENTS—INSTRUCTIONS—SUFFICIENCY.
  On trial for larceny of a horse and buggy, where the defense was intoxication, the court charged that the jury must be satisfied that the taking was with criminal intent; and that one who, with intent to deprive or defraud an owner of his property, or of the use and benefit thereof, or to appropriate same to the use of the taker, or of any other person, either takes from the possession of the owner, or of any other person, any money, personal property, or article of value of any kind, is guilty of larceny. *Held* a sufficient enumeration of the essentials of the crime of grand larceny.

Appeal from Cayuga county court.

Edward F. Gaynor was convicted of the crime of grand larceny in the second degree, and from the judgment, and from an order denying a new trial made before judgment, and also from an order denying a new trial on newly-discovered evidence, he appeals. Reversed.

The defendant was indicted at a term of the supreme court held in Cayuga in January, 1898, for the crime of grand larceny in the second degree, alleged to have been committed in said county on the 30th day of November, 1897, in taking the property of Dr. Eugene S. Forman. This indictment was sent to the county court of Cayuga county for trial. The trial was had in February, 1898, and the defendant was found guilty by the jury of the crime charged in the indictment, and was sentenced to be confined in the state's prison at Auburn for a term of one year and eleven months; and thereafter the county judge of Cayuga county, on the application of the defendant, granted a certificate of reasonable doubt as to whether the judgment of conviction should stand.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Robert L. Drummond, for appellant.
George W. Nellis, Dist. Atty., for the People.

WARD, J.    The offense of grand larceny in the second degree, of which the defendant was convicted, was predicated upon the following facts:   The complainant, Dr. Forman, a physician engaged in the practice of his profession, about 5 o'clock in the afternoon of November 30, 1897, stopped with his horse and buggy in front of a barber shop, in the city of Auburn, tied his horse to a post, and entered the barber shop to get shaved, and, when he came out shortly afterwards, he found that his horse and buggy were gone, together with the robe and blanket, medicine case, and a whip, which were in the wagon, all of the value exceeding $200.    The doctor saw the defendant on the opposite side of the street at the time he hitched the horse, walking along in the usual way, and no one with him.    While the doctor was in the barber shop, the defendant unhitched the horse; drove off with it through the streets at a violent rate; stopped at saloons; hitched the horse or left him in charge of some person, and passed in, and obtained drinks; resumed his drive until about 6:30 p. m. of that day, when he was still continuing the driving.    He was arrested by a police officer of the city, who had heard of the loss of the doctor's horse and wagon.    The defendant was driving fast, but was overtaken by the police officer, when, as the officer approached the defendant, he started to make a stop, and go up to the side of the street, and that slackened the horse's speed a little, so that it gave the officer a chance to arrest him.    The officer seized the lines, and got into the wagon, and as he got in there it was dark.    The defendant said, "What is the matter?"    The officer said, "I guess I want you over to headquarters."    The defendant then said, "I ain't going over there; let me get out."    After some difficulty and resistance on the part of the defendant, the officer was enabled to complete the arrest, and take the defendant to a place of confinement.    There was no question upon the trial as to these facts.    The defense was based upon the sole ground that the defendant was in a state of beastly intoxication when the alleged crime was committed; that he had no consciousness of what he was doing, and had no criminal intent in the transaction.

The proof offered by the defendant was mainly directed to showing this intoxication of the defendant.    Charles Conboy, a brother of the defendant's wife, was a witness for the defendant upon the trial.    He testified that he heard of the taking of the doctor's horse; that at the time he was living in the same house with the defendant; and that he remembered his condition for several days prior to the day that the horse was taken.    He was asked to state, by the defendant's counsel, what that condition was.    The district attorney made a general objection to this evidence, which the court sustained.    The defendant's counsel then offered to show by this witness, who saw him daily, the defendant's condition in respect to intoxication, and being under the influence of liquor for several days prior to the day that the horse was

taken, and the same condition continuing down to within a short time before it was taken. By the Court: "I rule that you may introduce testimony tending to show a condition of intoxication on the day of the crime, but not before,"—to which the defendant's counsel excepted.

Witness then testified that on the day that the horse was taken, and about 3 or 4 o'clock in the afternoon, he saw the defendant come into a saloon in Auburn, and was asked by defendant's counsel what condition the defendant was in when he came in,—whether drunk or sober. To this the district attorney objected, and the court said: "I think you must let the witness describe his appearance and conduct. Let the jury draw the inference whether he was so or not. I will sustain the objection,"—to which the defendant's counsel excepted.

Several witnesses were introduced on the defendant's behalf,—persons who had witnessed people in a condition of intoxication,—and they were asked to state the condition of the defendant on that day, at about the time of the commission of the alleged crime, as to intoxication or as to being drunk or sober; and the answers to these questions were rigidly excluded by the learned trial court upon the ground that the witnesses could only describe the condition, action, conduct, or words,—could detail what they saw or observed, without drawing a conclusion as to the defendant's condition; and the witnesses were not allowed to state their conclusions as to whether the defendant was intoxicated or otherwise. Exceptions were taken to the exclusion of this evidence in each instance.

These rulings present error of so important a character that it must lead to a reversal of the judgment of conviction. As to whether a party at a given time is intoxicated nonexperts as well as experts can give an opinion. 1 Whart. Ev. § 451. The minute and peculiar appearances of a person, his acts, gestures, looks, and other things, which indicate a state of sobriety or of intoxication, cannot fully be described, and a long line of cases in this state have established the proposition that the judgment or conclusion of an observer may be given upon the subject.

The court of appeals said in People v. Eastwood, 14 N. Y. 566:

"A child six years old may answer whether a man (whom it has seen) was drunk or sober. It does not require science or opinion to answer the question, but observation merely. But the child could not, probably, describe the conduct of the man so that, from its description, others could decide the question. Whether a person is drunk or sober, or how far he was affected by intoxication, is better determined by the direct answer of those who have seen him than by their description of his conduct. Many persons cannot describe particulars. If their testimony were excluded, great injustice would frequently ensue. The parties who rely upon their testimony will still suffer an inconvenience, for the court and the jury are always most impressed by those witnesses who can draw and act a living picture before them of what they have seen. So, if there is any controversy as to the fact, such witnesses control; if there is not controversy as to it, the general testimony answers all useful purposes."

Whether the defendant was so far intoxicated as not to be responsible for his acts in taking the horse and wagon was a closely contested question of fact upon the trial, and the defendant was entitled to have

his witnesses present to the jury "a living picture" of his condition.

The case cited is followed by and sustained in McCarty v. Wells, 51 Hun, 171–174, 4 N. Y. Supp. 672; People v. Wright, 136 N. Y. 630, 631, 32 N. E. 629; Ferguson v. Hubbell, 97 N. Y. 518; Felska v. Railroad Co., 152 N. Y. 344, 46 N. E. 613; Abb. Tr. Ev. 119, and cases cited.

We also think it was erroneous to exclude the evidence offered of the intoxicated condition of the defendant a few days before the commission of the alleged crime, leading up to the day of its commission. This evidence was competent, as bearing upon his condition on that day. People v. O'Neill, 112 N. Y. 362, 363, 19 N. E. 796.

Prior to the enactment of section 22 of the Penal Code, there was some conflict in the authorities as to whether voluntary intoxication furnished an excuse for crime under any circumstances; but that section provides that while no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of being in that condition, yet where the purpose, motive, or intent is a necessary element in constituting the crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the intent with which the act was committed. In larceny an intent to deprive or defraud the true owner of his property, or of the use or benefit thereof, or to appropriate the same to the use of the taker, or of any other person, is essential to establish the crime. Section 528, Pen. Code.

The learned counsel for the appellant seriously urges the point that the learned trial court committed error in its charge to the jury, in its statement of what the crime of grand larceny consisted of. We have examined the exception taken to the charge upon this subject, and do not find reversible error therein. The trial court charged that the jury must be satisfied of one thing, that the taking was with criminal intent, which the statute makes an essential in the crime of larceny, and presented to the jury a synopsis of section 528 as the law, as follows:

"A person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either takes from the possession of the true owner, or of any other person, * * * any money, personal property, * * * or article of value of any kind, * * * steals such property, and is guilty of larceny."

This statement of the law was correct with reference to the case before it.

Affidavits were presented by the defendant to the trial court, upon a motion for a new trial, upon the ground of newly-discovered evidence. The motion was denied, and the appeal herein brings up the question of the correctness of that decision. We need not, however, consider this appeal, as the conclusions which we have reached will result in a new trial to the defendant.

The judgment of conviction and the order denying the motion for a new trial upon the merits and exceptions should be reversed, and a new trial ordered. All concur.