## DENNEY v. UNITED STATES.

### No. 4071.

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1950.

Rehearing Denied Nov. 22, 1950.

12. Defendant raised the point in his answers. Furthermore, lack of jurisdiction over the subject matter is not waivable.

Martin A. Threet and Joseph R. Mc-Neany, Albuquerque, N. M., for appellant.

Albert H. Clancy, Asst. U. S. Atty., Santa Fe, N. M. (Everett M. Grantham, U. S. Atty., Albuquerque, N. M. was with him on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, as administrator of the estate of William Myre Denney, brought this action under the Federal Tort Claims Act, 28 U.S.C.A. 931 (now Section 1346), seeking damages for the wrongful death of his decedent, who was killed by an unexploded artillery shell, left upon a target range of the United States in Dona Ana County, New Mexico. The basis of liability is an alleged public nuisance; and negligence in the operation of an ultrahazardous activity. As the trier of the facts, the trial court found that although the "shells or duds" were "a dangerous instrumentality when handled by any person not familiar with their mechanism," the defendant was not negligent in leaving them in the vicinity of the target, nor was its negligence the cause of the death of the deceased"; that death "was caused solely by his acts or that of his companion in handling the unexploded shells or duds." Judgment was entered for the defendant.

There were no eyewitnesses to the fatal accident, but the facts leading up to decedent's death, as developed by the testimony of his companions, are not in dispute. The decedent, at the time of his death, was seventeen years of age, a junior in high school and above average in intelligence. For some years prior to his death, the United States Army had maintained and operated a target range in an isolated and desolate area approximately sixteen miles from Las Cruces, New Mexico. On the date of his death, decedent and five other boys about his age, entered upon the range in search of a cave. The area was enclosed by a fence, but there were no posted signs and the boys did not know that they were upon the range until they began to see "block houses" and shells upon the ground. At one point they stopped, picked up one of the shells and loaded it in their truck. When they reached a fork in the road, which they believed led to the cave,

the decedent and a boy by the name of Warren, left their companions and went to investigate a "white object" about a quarter of a mile away.

The other boys located and explored the cave. When they came out of the cave about forty minutes later they saw what appeared to be "dust" in the vicinity of the "white object," and shortly thereafter heard an explosion. Upon investigation, they found the body of the Warren boy near the "white object" (an automobile covered with a white canvas and used as a target), but could not at that time find the deceased. Later small pieces of his body were found. They stated that the area around the target was scattered with shells; they did not know whether they were exploded or unexploded; they could not remember seeing any depression from the explosion, but stated there was a small smoldering fire with a shell in the middle of it.

The only other testimony before the court was that of Major Montgomery, an expert Ordnance Officer of the United States Army. He was of the opinion, from the evidence and physical facts, that if the decedent and his companion were killed by a "dud" it would have been a 90 millimeter. He stated there was an Ordnance regulation requiring that all unexploded shells found upon the range be reported to the demolition crew; that many times the 90 millimeter shells were partially buried in the ground and that in removing them from the range, ordnance men used a pick and shovel; that they were not "easy to activate"—that you have to "definitely do something to make them explode," such as "unscrewing the fuse," or by a "major disturbance." Upon inquiry by the court, the Major stated that for the body to be completely disintegrated as it was, he would estimate that decedent was "sitting straddle" the shell, which is the ordinary position when attempting to lift them out of the ground.

Appellant contends that the unexploded shells or duds on the target range constituted a public nuisance, and therefore the rule of strict or absolute liability should have been applied. Although the term "nuisance" defies universal definition, in legal contemplation it may fairly be said to be the unreasonable, unwarranted, or unlawful use of property, which causes injury, damages, hurt, inconvenience, annoyance or discomfort to one in the legitimate enjoyment of his reasonable right of person or property. 39 Amer.Jur. Nuisances, Sec. 2; 46 C.J. Nuisances, 645–6; Maier v. Publicker Commercial Alcohol Co., D.C., 62 F.Supp. 161, Id., 3 Cir., 154 F.2d 1020. Nuisances are classified as nuisances per se and nuisances in fact. A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings, while a nuisance in fact is commonly defined as an act, occupation, or structure not a nuisance per se, but one which may become a nuisance by reason of circumstances, location, or surroundings. Engle v. Scott, 57 Ariz. 383, 114 P.2d 236; McPherson v. First Presby. Church, 120 Okl. 40, 248 P. 561; 39 Amer.Jur. Nuisances Sec. 11. But, in either case, once a nuisance is established strict liability is imposed, unless an efficient intervening cause operates to insulate the defendant from liability.

Common experience has taught that there is scarcely anything more apt to do widespread serious harm than the improper use of explosives, although they are not under all circumstances nuisance per se. See Oklahoma Law Review, Vol. 3, No. 1, February, 1950, Liability Without Fault; Amer.Jur. Vol. 22, Explosions and Explosives, Sec. 27. Whether the manufacture, possession or use of explosives constitute a nuisance is determined from all the surrounding circumstances in each case, such as locality, quantity, nature of the explosive, its likelihood to accidentally explode, and manner of keeping. Thus, when highly explosive and inherently dangerous substances are kept or used in thickly populated areas or in proximity to homes and buildings, so as to make danger extreme and injury probable, the courts have held possession or use a nuisance per se, and imposed strict liability for damages or injuries resulting therefrom. See Exner v. Sherman

Power Construction Co., 2 Cir., 54 F.2d 510, 80 A.L.R. 686, and cases collected in the annotation at page 692.

But, the facts here show that the Target Range is located in an isolated area sixteen miles from Las Cruces, the home of the deceased; that the shells were not inherently dangerous, but became dangerous only when handled by a person not familiar with their mechanism. That the shells could not explode unless force or power was applied, or the fuse unscrewed. These facts do not establish nuisance per se. Whether they establish nuisance in fact was a question which the trial court by its judgment resolved against the appellant. We must conclude, therefore, that the rule of strict or absolute liability is not applicable.

It is next contended that, having found the shells were dangerous instrumentalities, the court erred in refusing to conclude as a matter of law, that failure to warn the deceased of the presence of the unexploded shells, or to destroy or deactivate them at the scene of the accident, constituted actionable negligence.

Applicable New Mexico law imposes but one duty in negligence cases, and that is to use due care—the care that a person of ordinary prudence would exercise under like circumstances. The decree of care does not vary with the increase or diminution of danger, but the quantum of diligence to be used differs under different circumstances. See Thayer v. Denver & R. G. R. Co., 21 N.M. 330, 154 P. 691; Pettes v. Jones, 41 N.M. 167, 66 P.2d 967; Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706; Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24.

Making application of this rule to the particular circumstances shown, we think the failure of the United States to warn the decedent, a seventeen year old high school boy of above average intelligence, who had actual knowledge of the presence of the range and shells thereon, did not constitute actionable negligence per se. See District of Columbia v. Moulton, 182 U.S. 576, 21 S.Ct. 840, 45 L.Ed. 1237; Haskell v. L. H. Kurtz, 181 Iowa 30, 162 N. W. 598; Yaniger v. Calvert Bldg. & Const. Co., 183 Md. 285, 37 A.2d 263; 2 Restate-

ment on Torts 340; Amer.Jur. Vol. 38 Negligence, Sec. 91. Nor do we think that the mere leaving of the shells upon the range, in the circumstances, can be said to be negligence as a matter of law. Our facts are wholly unlike Beasley v. United States, D. C., 81 F.Supp. 518, where officers in charge of a Federal quarantine station had actual knowledge and acquiesced in the dangerous activities of a ten year old boy which culminated in an explosion causing serious injuries to the boy. Moreover, the trial court there found that the explosion and resulting damages were caused by the negligence, both active and passive, of those in charge of and responsible for the safety of the premises. In our case, the trial court has specifically resolved the issue of negligence against the appellant, and that finding is conclusively binding here.

Having determined that the Government was not negligent, we do not reach the question whether at the time of the accident, the deceased was exercising ordinary care for his own safety.

The judgment is affirmed.