Fboessel, J.
This is an action to recover damages for personal injuries sustained by plaintiff, a taxicab driver for some 26 years, when he was shot without provocation by a police officer, Patrolman Thomas J. Long, who was a passenger in his cab at the time. Liability of the city is predicated on the theory that the three police officers who, according to plaintiff’s testimony, placed Long in his cab, knew or should have known that Long was intoxicated and carrying a loaded revolver at the time, and were thus negligent in failing to protect plaintiff from a known risk of bodily harm. The trial court dismissed plaintiff’s complaint at the close of his case, and the Appellate Division affirmed. Plaintiff argues on this appeal that the issue of defendant’s negligence presented a question of fact for the jury.
At about midnight on November 3, 1948, while plaintiff was *458 driving his cab north on Ninth Avenue in Manhattan approaching 47th Street, on his way to the garage, he was hailed, according to his testimony, by a group consisting of three uniformed policemen and one man not in uniform. Plaintiff testified that he knew there was a police station on 47th Street; that midnight was a time for shifts of duty; and that he saw quite a few police officers in the area. A deputy inspector testified that 195 men were attached to this precinct. One of the uniformed policemen, referring to the man without a uniform, addressed plaintiff thusly: ‘ ‘ Take this man wherever he wants to go * * #. He will tell you where to go. * * * He is one of our men.” Plaintiff, who recognized the man in civilian clothes as Patrolman Long, turned around and said: “ I know this cop The three policemen thereupon walked away, and Long entered the cab, sat in the pullman (pull-down) seat in the rear, and told plaintiff to take him to Tenth Avenue and 43d Street.
Plaintiff had no further conversation with Long until the cab was approaching 43d Street when Long suddenly held a gun at plaintiff’s neck. Long told him to turn the cab around, which plaintiff did. Then Long alighted from the cab, opened the door and told plaintiff to “ Get off the seat”. There was a brief conversation in which plaintiff tried to reason with Long, but Long simply repeated his request. Plaintiff did not alight because he was afraid to; Long then pulled the trigger of the gun (requiring 9 or 10 pounds pressure) and shot plaintiff through the knee. As a result of the injury plaintiff was hospitalized for 13 weeks and was out of work for more than a year. Plaintiff testified that he had never seen the three police officers before and never saw them afterwards.
Following the shooting, Long was taken to the 16th Precinct Station House. At 2:45 a. m. he was examined by a police surgeon, who had been called at 1:50 a.m., and found “unfit for duty due to over-indulgence in some intoxicating Agent or Agents ’ ’. He was immediately suspended from duty, and later, upon conviction for second degree assault, a felony, he was automatically dismissed from the police force. ' The report of the surgeon’s examination includes the following findings: “ Tongue Coated and tremulous — Face flushed — Odor of breath alcohol * * * Speech talkative indistinct — Conjunctivas Injected — Skin Moist — Mentality Clowded [sic] Co-ordination poor ”. (Italicized words typed; others printed.)
*459 Long was called as plaintiff’s witness. He stated that he was off duty the evening of November 3d, and that he was carrying a loaded .38 Smith & Wesson revolver as is required by Police Department regulations. Long admitted that before entering the cab he had consumed at least 8 beers at a tavern on 47th Street and Ninth Avenue, and that he had nothing to drink between the time he entered the cab and the time he was examined by the police surgeon.
Long offered a somewhat different version from that given by plaintiff of the events leading up to the shooting. He said he was alone when he came out of the tavern and entered the cab. He told plaintiff to take him to South Ferry, whence he was going to take a boat to Staten Island where he lived. As soon as he entered the cab he fell asleep. He awoke to find himself at 43d Street and Tenth Avenue. He alighted from the cab and opened plaintiff’s door to ask him why he had not taken him to South Ferry. At the same time, Long drew his pistol for “ Preparedness ” because he “ wasn’t at [his] destination”, and because it was an unreasonable hour and he saw what neighborhood he was in — he had “ worked the neighborhood for so many years ”. In the act of transferring the pistol from its holster to his coat pocket, it 11 accidentally went off ’ ’, wounding plaintiff.
Plaintiff introduced in evidence certain of the Police Department rules and regulations, including section 288, which requires a member of the force to carry a prescribed revolver at all times even 1‘ when off duty and not in uniform ’ ’.
It is alleged in the complaint, among other things, that defendant was negligent in retaining in its employ ‘‘ a brutal, dangerous, troublesome and incompetent person ’ ’ who had been the subject of disciplinary action because of his excessive addiction to alcohol and that defendant had knowledge of Long’s vicious propensities. This was the theory of liability in McCrink v. City of New York (296 N. Y. 99). In the instant case, however, the record is devoid of any proof that the defendant had knowledge, actual or constructive, of any such propensities on the part of Long.
The complaint, however, contained other allegations of negligence. On this appeal, plaintiff relies on the theory, supported by appropriate allegations of the complaint, that defendant’s employees, the three police officers, who arranged to have Long taken off the street and placed in the cab, “ were negligent in *460 that they knew or should have known that Long was then drunk and in possession of a loaded revolver, and that their action involved a known risk of bodily harm to others, and particularly to the plaintiff.”
In granting the motion to dismiss the complaint at the close of plaintiff’s case, and after having previously stated: “It is not an easy case to decide ”, the trial court ruled, among other things, that there was ‘1 no proof ’ ’ that the men described by plaintiff (as policemen in uniform) were New York City policemen, no proof as to their rank or authority to direct Long, no proof as to Long’s condition at the time he was put into the cab, no proof that the three men had knowledge of Long’s condition, and, even if they did have such knowledge, “ as laymen their opinions would have been worthless as to the condition of Long ”, to all of which rulings exceptions were taken throughout.
Our function in cases of this kind is limited and well-defined. If there is any evidence in the record — direct or circumstantial —from which defendant’s negligence may be reasonably inferred, the case should go to the jury, and thus it was error to dismiss this complaint (Dunham v. Village of Canisteo, 303 N. Y. 498, 503; Betzag v. Gulf Oil Corp., 298 N. Y. 358, 362). Giving plaintiff the benefit of every reasonable inference, as we must (Levine v. City of New York, 309 N. Y. 88, 92), it clearly appears that the jury could well have concluded:
(1) That the uniformed men described by plaintiff at the time (change of midnight shifts) and place (near the 16th Precinct) were in fact police officers. Plaintiff was not required to prove that they were not disguised as such.
(2) That the uniformed policemen knew Long was intoxicated, since he was unmistakably found to be so by a police surgeon at 2:45 a.m. and had had no drinks meanwhile, and because of the further fact that they deemed it necessary to engage a cab, give the driver directions and tell Mm Long was “ one of our men ”.
(3) That said uniformed policemen were chargeable with knowledge of their own regulations and thus knew Long was armed with a revolver at the time.
Whether the police officers could reasonably have foreseen the likelihood of harm to plaintiff, or anyone else for that matter, from placing this armed intoxicated police officer in his taxicab was likewise a jury question (see Benway v. City of Watertown, 1 A D 2d 465). They of course did not have to foresee the par *461 ticular result complained of (O’Neill v. City of Port Jervis, 253 N. Y. 423, 434).
The fact that there was no proof as to the officers’ rank was of no consequence. The presence of a drunken policeman — or a drunken civilian — while armed and upon the public streets, was a potential danger, and called for police action — arrest, detention or at the very least disarming. To thus turn him over, instead, to a taxicab driver, who of all persons can ill afford to disobey the direction of police officers, was, a jury could find, negligence on the officers’ part.
In McCrink v. City of New York (supra), we held that the Appellate Division erred in dismissing a complaint as a matter of law where the Police Department had knowledge of a police officer’s addiction to alcohol by reason of three prior disciplinary proceedings. Here a jury could find that the city’s police officers had knowledge, not of an addiction to drunkenness, but of Long’s drunkenness in fact, and at a time when he was armed, thus constituting a source of more immediate potential danger — indeed a menace to plaintiff.
The statement of the trial court that the opinion of the policemen “ would have been worthless as to the condition of Long ” was clearly erroneous (Felska v. New York Cent. R. R. Co., 152 N. Y. 339, 344; People v. Gaynor, 33 App. Div. 98, 101), as was the statement that if Long’s shooting was accidental there was no negligence as a matter of law.
It is true that many of the elements upon which liability of the defendant may be based come from plaintiff’s own testimony, but, since it cannot be said that such evidence is “ incredible as matter of law ” (Swensson v. New York, Albany Desp. Co., 309 N. Y. 497, 505; Blum v. Fresh Grown Preserve Corp., 292 N. Y. 241, 246; Cohen and Karger, Powers of New York Court of Appeals, § 108, pp. 453-455), plaintiff was entitled to go to the jury for a determination as to liability for the serious injury and damage which he has suffered from an utterly unprovoked assault.
Accordingly, the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.
Chief Judge Conway and Judges Desmond, Dye, Fuld and Van Voorhis concur; Judge Burke taking no part.
Judgment reversed, etc.