603 P.2d 303 (1979)
93 N.M. 569
Rose TRUJILLO, as Administratrix of the Estate of Ernest Trujillo, Deceased, Plaintiff-Appellant,
v.
The CITY OF ALBUQUERQUE, a Municipal Corporation, et al., Defendant-Appellee.
No. 3779.
Court of Appeals of New Mexico.
October 11, 1979.
*304 Thomas E. Jones, Albuquerque, for plaintiff-appellant.
Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, Cornelius Finnen, Asst. City Atty., Albuquerque, for defendant-appellee.

OPINION
ANDREWS, Judge.
The question presented in this case is whether, prior to both the prospective abrogation of the doctrine of sovereign immunity by our Supreme Court in Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1975), and the enactment of New Mexico's Tort Claims Act, § 41-4-1 et seq., N.M.S.A. 1978, a municipality of this State could be sued for its failure to provide adequate police protection in a public park. The trial court found that such a suit could not be maintained. We affirm.
On June 22, 1975, plaintiff's decedent, Ernest Trujillo, along with a group of friends, was in Roosevelt Park, a park established and maintained by the City of Albuquerque. Earlier in the day, a rock concert had been held but Ernest and his friends went to the park after the concert was over. They were sitting on the grass when they were approached by, and had some kind of altercation with, another person who then left the park. Shortly thereafter, a second person approached Ernest and his group, accusing them of having "picked on" his brother, and drew a gun, firing it once or twice. Ernest and his friends then chased this person to the top of a knoll where a third person, Wilbert Miles, stood and fired a shotgun "into the ground", hitting and killing Ernest.
This action is brought by Ernest's mother for damages caused by the death of her son. Her first complaint alleged that the City maintained the park; that the maintenance of the park was a proprietary function of the City; that the City allowed the rock concert to be held in the park without proper police and security arrangements; that the City had a duty to secure the park and protect citizens using it, particularly a duty to protect Ernest's well-being; and that the City breached its duty and was therefore liable in damages.
*305 The City moved to dismiss or for summary judgment and the motion was granted for failure to state a claim, with leave granted to amend. The first amended complaint alleged basically the same facts but noted that the park had been known as a "hot bed" for years and that, in failing to take measures to maintain the park as a safe place, the City had allowed it to become a nuisance. Further, the plaintiff alleged that the City's negligence in maintaining the nuisance resulted in Ernest's death and prayed for damages totalling $1,096,560.00.
The City again moved to dismiss for failure to state a claim or for summary judgment. The court granted the motion for summary judgment, finding as follows:
1. That characterizing the cause of action as a nuisance, or characterizing the cause of action as based upon park maintenance, does not change the true character of the action wherein the real complaint is that the City did not provide adequate police or other protection at Roosevelt Park.
2. The claim that the City inadequately provided police or other protection for the public from assault, battery and possible death, is a governmental function and the action having occurred before the doctrine of sovereign immunity was abrogated, results in the conclusion that the City is not subject to suit in this action.
The plaintiff appeals from the summary judgment, raising as her only point the existence of genuine issue of material fact, "namely, whether or not the manner in which Roosevelt Park was maintained on the 22nd of June, 1975, and prior thereto constituted a nuisance."
The trial court, as shown by its order, considered the action to be based on the City's failure to provide police protection to Ernest, that the provision of such protection was a governmental function and therefore one on which the City was immune to suit. These conclusions were correct.
While New Mexico courts have not had occasion to directly address the question of whether a city is liable for failure to provide adequate policing to protect one citizen from being assaulted by another citizen, it is clear that a municipality will neither be held liable for failure to carry out a statutory function, nor a governmental function. The City of Albuquerque was granted immunity in Barnett v. Cal M, Inc., 79 N.M. 553, 445 P.2d 974 (1968), when it was held that the operation of a police department is a governmental function, and the City of Clayton was found to have no special duty beyond that owed to the public in general in Doe v. Hendricks, 92 N.M. 499, 590 P.2d 647 (Ct.App. 1979).
In Doe v. Hendricks, a case we find consistent with the majority rule, see Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla.App.), cert. denied, 250 So.2d 643 (Fla. 1971); Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968); Anno. "Liability of Municipality or Other Governmental Unit for Failure to Provide Police Protection", 46 A.L.R.3d 1084 (1972), the parents of a child brought an action for damages against the City and its police officers alleging that the child had been assaulted because the police, after having been called, failed to respond with sufficient speed to prevent the assault.
Judge Sutin found that liability for such failure would exist only if there had been a specific promise or protection by the police to the victim or if the police officer had affirmatively caused the damage of which the plaintiff was complaining, stating that the public duty owed by the City and its police officers will not support an action for damages by a single citizen harmed by the criminal action of another.
Thus, where there is no showing of a direct relationship or contact between the victim and the police creating a special duty, there is no liability on the part of the police and municipality. Plaintiff here has failed to establish that a special duty existed *306 between the victim and the police, therefore there is no liability.[1]
Next, the plaintiff argues that the maintenance of a public park is a proprietary function which exposes the City to liability. In making this argument, plaintiff fails to distinguish between maintenance of physical facilities in a park such as was the case in Murphy v. City of Carlsbad, 66 N.M. 376, 348 P.2d 492 (1960) and the maintenance of law and order so as to prevent third persons from committing violent acts in a park. The distinction is decisive and controlling. For while maintenance of parks is a proprietary or private function, the maintenance of good order in a park, and the prevention of dangerous conditions there caused by imprudent conduct of individuals is a governmental function, in the exercise of which a municipality is not liable. See Williams v. City of Longmont, 109 Colo. 567, 129 P.2d 110, 142 A.L.R. 1337 (1942).
Finally, plaintiff contends that the lack of police protection for Roosevelt Park was a condition constituting a public nuisance, and that she has standing to abate such a nuisance under § 30-8-8(B), N.M.S.A. 1978, which states:
A civil action to abate a public nuisance may be brought, by verified complaint in the name of the state without cost, by any public officer or private citizen, in the district court of the county where the public nuisance exists, against any person, corporation or association of persons who shall create, perform or maintain a public nuisance.
We need not address the issue of whether the alleged conduct of the City constitutes a public nuisance because it is clear that the statute cited above imposes no duty on the city in connection with the alleged public nuisance. As stated in Roberson v. District of Columbia, 86 A.2d 536 (D.C. 1952), where the plaintiff was injured by children playing on a city sidewalk:
any duty of the District to prevent loitering, congregating and playing on public sidewalks is a public duty calling for the exercise of the government's police power, and the exercise of police power is strictly a governmental function. Moreover, the prevention of loitering involves either the making or enforcing of regulations governing the use of streets and the decisions generally are in accord that no liability may be imposed on a municipal corporation for its failure to enact or enforce ordinances. 86 A.2d 536.
Such reasoning is applicable here. As in Roberson, the alleged nuisance is not the condition of the land, the physical structures on the land or the activities of the landowners. The alleged nuisance is the acts of third persons who come on the land. Accord Tennessee Coal Iron & Railroad Co. v. Hartline, 244 Ala. 116, 11 So.2d 833 (1943); Southern Ry. Co. v. State, 130 Tenn. 261, 169 S.W. 1173 (1914).
To hold a municipality liable for the conduct of third persons, such as is alleged in the complaint before us, would, in our opinion, be contrary to sound public policy and create policing requirements difficult of fulfillment. As stated in Doe v. Hendricks, supra, the legislature, the representatives of the people, fix the public policy of the State. The duty of the courts is to express that public policy. We have done so in this case.
No genuine issue of material facts is shown by the record and the summary judgment is affirmed.
IT IS SO ORDERED.
WOOD, C.J., concurs.
SUTIN, J., dissenting.
SUTIN, Judge (dissenting).
I dissent.
The City of Albuquerque's motion for summary judgment was granted. Summary judgment was not based upon the *307 premise that no genuine issue of material fact existed. It was based upon two erroneous legal principles set forth in the majority opinion: (1) the real complaint of plaintiff's amended complaint is that the City did not provide adequate police or other protection at Roosevelt Park and (2) that police protection is a governmental function. Summary judgment should be reversed.
Before establishing reversible error, it is more important to me, if this opinion is not denied publication by the Supreme Court, to educate the uneducated appellate lawyer. Ofttimes, I prefer that certiorari be denied.

A. Educating an uneducated appellate lawyer is important for the protection of a client.

Trying to educate the appellate lawyer in the art of appellate practice is as effective as teaching a two year old child the art of becoming a grand master in chess. Rule 9(m)(5), Statement of Proceedings of the Civil Rules of Appellate Practice, provides that in the absence of trial before the court or jury, an appellant shall make "a concise statement or summary of each such ruling or action" of the trial court. This rule is applicable to summary judgments. See excellent Statement of Proceedings in City's Answer Brief.
Plaintiff's Statement of Proceedings, 5 1/2 pages long, irrelevant and immaterial, proves that lawyers may have learned to read the English language, if the above rule was read, but do not understand it. This practice is common, intended, perhaps, to be a good psychological approach in which to attract appellate judges' attention to the issues in the appeal.
This criticism is not new. It has appeared in a host of opinions unknown, of course, to lawyers who will not read or study. Criticism of the remainder of plaintiff's Brief-In-Chief is better left unsaid. Our duty, however, is to protect the client, not the lawyer. Plaintiff's attorney should read this point to his client regardless of the publication or nonpublication of this dissent.

B. The amended complaint was a substantial change in nature from the original complaint.

In the original complaint filed, plaintiff claimed that the City "had a duty to secure Roosevelt Park and protect the citizens" who used the park, including decedent Ernest Trujillo, but the City "failed to carry out the duty... ." [Emphasis added.] This claim was dismissed with leave to amend.
The second count of plaintiff's amended complaint alleged that Roosevelt Park in Albuquerque was for many years a knowingly dangerous park, potentially dangerous to life and limb of persons who used the park; that the City was "beseeched and implored" to take some action to abate this nuisance, but it took no action; that the City failed to maintain the park in a safe and proper condition; that "By reason of the City of Albuquerque's negligence in maintaining this nuisance and by its acts and omissions in failing to abate this nuisance, the Plaintiff decedent [Ernest Trujillo] was wrongfully killed... ." [Emphasis added.]
After carefully studying the City's motion for summary judgment, the court wrote the parties:

I do not believe, (1) by characterizing the cause of action as a nuisance, or (2) by characterizing the action by the place where the alleged incident occurred, i.e., a park, one can change the nature of the action. ... [Emphasis added.]
The trial court then granted summary judgment because "the real complaint is that the City did not provide adequate police or other protection at Roosevelt Park" and that this claim is a governmental function and the City is not liable. The trial court was mistaken.
The amended complaint was not "double-talk" in the sense that it sought to "double-cross" the City by changing the nature of the action from "a duty to secure [persons in] Roosevelt Park," to "negligence in maintaining a nuisance" and "failing to abate a *308 nuisance." Plaintiff made a substantial change in the nature of the original action and stated a claim for relief.

C. The definition and classification of "nuisance" in New Mexico do not entail police protection.

Denney v. United States, 185 F.2d 108, 110 (10th Cir.1950), absent citation of authorities, defines and classifies the term "nuisance":
... Although the term "nuisance" defies universal definition, in legal contemplation it may fairly be said to be the unreasonable, unwarranted, or unlawful use of property, which causes injury, damages, hurt, inconvenience, annoyance or discomfort to one in the legitimate enjoyment of his reasonable right of person or property. Nuisances are classified as nuisances per se and nuisances in fact. A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings, while a nuisance in fact is commonly defined as an act, occupation or structure not a nuisance per se, but one which may become a nuisance by reason of circumstances, location or surroundings. But, in either case, once a nuisance is established strict liability is imposed, unless an efficient intervening cause operates to insulate the defendant from liability. [Emphasis added.]
This definition has been adopted in New Mexico. Koeber v. Apex-Albuq. Phoenix Express, 72 N.M. 4, 380 P.2d 14 (1963); Otero v. Burgess, 84 N.M. 575, 505 P.2d 1251 (Ct.App. 1973). See, Huntsman v. Smith, 62 N.M. 457, 312 P.2d 103 (1957) of which it has been said: "The court was mislead by a statement in 65 C.J.S. Negligence § 1 at 317 which distinguished nuisance from negligence on the theory that the former was an absolute and the latter a relative duty, whatever this means." Fink, Private Nuisance in New Mexico, 4 N.M.L. Rev. 127, 150, Note 79 (1974). Huntsman has not been followed. (As attorney for defendant, I could not convince the Supreme Court of its mistake).
Professor Fink points out that "nuisance is said to be either public or private." [id. 127.] Under Note 1, he states that "the definitions and distinctions used in the introductory part of this article are those generally expressed in the Restatement of Torts... . It must be recognized, however, that legislatures and courts in various states have defined `nuisance' and types of nuisances in other senses than the one adopted by the Restatement. Compare Denney v. United States, 185 F.2d 108 (10th Cir.1950)... ."
From Professor Fink's introductory note, it appears that Denney's definition and classification are applicable in New Mexico to both public and private nuisances. Denney was a public nuisance case. The definition and classification were adopted in private nuisance cases.
In May, 1979, the tentative Restatement draft of the law of nuisance became permanent. Restatement of the Law, Second, § 821 a, et seq. (1979). The adoption of this law rests in the Supreme Court.
As applied to the instant case, Denney means that if the use of Roosevelt Park was unreasonable, unwarranted or unlawful, it was a nuisance in fact, not a nuisance per se; that if the nuisance interfered with the enjoyment of decedent's legal rights in the park, the City was strictly liable to plaintiff for damages for the death of decedent, Ernest Trujillo.

D. A nuisance, created and/or maintained, by a municipality, does not grant immunity to the City for acts done in performance of governmental functions.

A city that creates and maintains a nuisance resulting in injury or death to persons subjects itself to civil liability for its acts whether or not the thing done or omitted constitutes negligence resulting in the nuisance. The city cannot escape liability therefore on the ground that in doing so it was exercising a "governmental function." Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480 (1943); 57 Am.Jur.2d Municipal, *309 Etc., Tort Liability, § 298 (1971); Annot. Rule of municipal immunity from liability for acts in performance of governmental functions are applicable to personal injury or death as result of a nuisance, 56 A.L.R.2d 1415 (1957); 63 C.J.S. Municipal Corporations § 770b (1950).
We must not confuse the concept of "nuisance" with that of "negligence." Where the city's conduct results in creating or maintaining a nuisance, it is an exception to the general rule to the effect that a city is not liable for negligence of its officers when acting in the performance of governmental functions. The gravamen of the offense is not necessarily negligence but nuisance, and is dealt with by the law of nuisance, whether the nuisance is negligently caused or otherwise. Adams v. Arkansas City, 188 Kan. 391, 362 P.2d 829 (1961).
Neither must we write essays on the liability of a city's governmental and proprietary activities. The measure of care required of a city arising out of the ownership of a park is the same as that which would have rested upon a private owner of the same property. Stevens v. City of Pittsburgh, 129 Pa.Super. 5, 194 A. 563 (1937), affirmed by adoption of lower court's opinion, 129 Pa. 496, 198 A. 655 (1938); Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942).
Stevens approaches the legal problem in the instant case. The City permitted a rifle club to establish a range in a well-defined area of a park. A boy was standing near his home on a neighbor's lawn which faced and was directly opposite the park. The fatal shot was fired by an older boy in the park, not a member of the rifle club, who shot at a tree stump and in some manner instantly killed the other boy. Witnesses testified that a continuous course of conduct in shooting by non-members lasted long enough to amount to implied or constructive notice to the City to afford it an opportunity to remedy the condition; that non-members of the rifle club were in the park with the City's knowledge and upon its implied invitation and permission to use the recreation facilities. The deceased boy's parents recovered judgment, but the trial court granted the City's motion N.O.V. In reversing the trial court, the following rule was enunciated:
Promiscuous shooting in the park by the city's permitees or invitees was clearly a highly dangerous activity and such a use of the city's land as would be likely to cause injury to other persons, outside of as well as within the park. It cannot be questioned under the testimony that the city had notice of the manner in which the property was being used and had opportunity to suppress the nuisance.
* * * * * *
The breach of duty here was not the failure of the city as a subdivision of the state properly to police, as in the street cases, but rather a failure in its proprietary capacity as a landowner to abate a dangerous condition existing upon its property of which it had notice. That the only way to abate the nuisance might incidentally be through the use of its police officers or other employees does not make the breach of duty essentially a failure to exercise a governmental function [194 A. at 568-69.]
A similar case which followed Stevens, is Gaines v. Village of Wyoming, 147 Ohio St. 491, 72 N.E.2d 369, 372-3 (1947) in which the court said:
A municipality, which by overt acts not only permits and encourages but also provides the means for the violation of law by invitees upon public grounds owned by it within the municipality, may be held liable for the creation and maintenance of a nuisance even though in the proper exercise of police power such violation should have been suppressed or offenders apprehended and punished. If it were otherwise, then a municipality ... would be exempt from damages in an action based upon nuisance... while a municipality, which by reason of its mere negligence resulting in a condition properly denominated a nuisance, would be held liable for the damage thereby caused.
* * * * * *

*310 The maintenance of a nuisance is, of course, not sufficient to support a verdict and judgment. It must also be shown by the evidence that the injury incurred was the proximate result of the maintenance of such nuisance. ... [Emphasis added.]
The incidental use of police to abate a nuisance does not transform a nuisance into a governmental function.

E. Essentials for summary judgment for City for plaintiff's claim of damages by way of nuisance.

Before the City can be awarded summary judgment, it must make a prima facie showing:
(1) That a nuisance in fact was not created or maintained by the City;
(2) The use of Roosevelt Park by persons invited and permitted to be present did not constitute a nuisance in fact that jeopardized the enjoyment by decedent of his legal rights in the park;
(3) That the City did not have knowledge, constructive or otherwise, that a nuisance in fact existed by reason of its implied invitation and permission of persons to use the park;
(4) That if a nuisance in fact existed, the City was not negligent in maintaining this nuisance and that the failure to abate the nuisance was not the proximate cause of decedent's death.
If this prima facie showing is made, the burden then shifts to plaintiff to establish a genuine issue of material fact.
NOTES
[1] Immunity need not be discussed in view of the prospective holding in Hicks v. State, supra.