## CIRCUIT COURT OF HENRICO COUNTY

Margaret Lynn Whitaker

v.

Estate of Lawrence E. Murphy
and C. K. Highsmith

August 18, 1982

Case No. 81-L-425

By JUDGE ROBERT M. WALLACE

The plaintiff has filed a Motion for Judgment and Amended Motion for Judgment against the defendants and the Estate of Murphy has filed its Grounds of Defense. Defendant Highsmith has filed a Demurrer to plaintiff's pleadings as well as other pleadings. The Court [overruled] the Demurrer as there was no appearance by defendant Highsmith, but counsel for Highsmith had the wrong time for Court appearance and the Court set aside its ruling on the Demurrer and allowed counsel to file Memos and heard argument of counsel. The Court took under advisement the Demurrer filed by Highsmith.

The facts appear to be that on or about January 4, 1981, Murphy, assistant to Governor John Dalton, shot and wounded his former fiancee, Margaret Lynn Whitaker, and then committed suicide. The defendants are the Estate of Murphy and C. H. Highsmith, a Virginia State Police Officer, who was in charge of the officers assigned to the Governor's security force at the time of the incident.

The plaintiff alleges by way of her Amended Motion for Judgment that the plaintiff and Murphy met in 1978 and became engaged to be married in April of 1980. However, Murphy's use of alcohol and accompanying bizarre behavior led to termination of the engagement. In May 1980, Murphy

shot several bullets through his bedroom ceiling while he was intoxicated. In July 1980, during a visit to Murphy's home by the plaintiff, Murphy consumed substantial amounts of alcohol and threatened the plaintiff's life, forcing her to flee. In November 1980, while celebrating the Presidential election, Murphy became intoxicated and demolished furniture in a room at the Washington Hilton Hotel in the District of Columbia. He threatened the plaintiff's life with his handgun and attempted to attack and beat her. The plaintiff locked herself in a bathroom until Officer Highsmith disarmed Murphy and calmed him.

Approximately one week before the January 4, 1981, incident, Murphy demanded that Highsmith return the gun confiscated on election night. Highsmith complied. Murphy went to the Whitaker residence while intoxicated. He verbally abused both the plaintiff and a friend and refused to leave. He ultimately put the gun to the head of the plaintiff's mother, fired two shots at her father, shot the plaintiff twice, and killed himself.

The plaintiff alleges that Highsmith was either informed or personally aware of all of the facts above, including Murphy's personality changes when intoxicated. It is alleged that the plaintiff's mother had complained to Highsmith several times about the problem that Murphy was causing for the family. Highsmith was allegedly aware that Murphy once threatened to shoot the plaintiff's father. In light of Highsmith's alleged knowledge of the situation, the plaintiff claims that returning the gun to Murphy violated Highsmith's duty to protect the plaintiff and her family from Murphy; to exercise the highest degree of care commensurate with his knowledge; and to exercise the necessary care to insure that undue loss of life or serious personal injury would not occur.

It appears to this Court that there are several issues raised by defendant Highsmith's demurrer.

1. As a matter of law, does an officer of the Virginia State Police owe a duty to an individual citizen not to return a gun to a third party when:

(a) the officer knows the third party suffers from a certain condition; and

(b) the officer knew or should have known that such condition made the third party, when in possession of a gun, a danger to himself and others; and

(c) the officer, from knowledge of the surrounding circumstances, knew or should have known (reasonable foreseeability) that the plaintiff in particular and not merely as a randomly selected member of the general public would be placed in danger if the gun was returned to a third party?

Determining whether a cause of action can be maintained against a police officer for breach of duty to an individual is a difficult proposition due to the confusing state of the law. There are no Virginia cases factually on point with the case at bar that I am aware of. The general rule recognized elsewhere is that a police officer owes a duty of protection to the public generally, but not to specific individuals; however, in applying this rule to the facts, there is a split of authority.

In cases which have recognized a cause of action similar to the case at bar, an affirmative act by a police officer most frequently has been the basis for finding that a duty existed. Once an officer undertakes some action to protect an individual, a duty to the individual can develop. Even a failure to act can be the basis for police liability, such as a failure to provide protection where a known danger exists.

The cases which have failed to recognize a police officer's duty to an individual have applied the general, "public duty" rule. These cases have most frequently involved a failure to provide protection or a failure to arrest a lawbreaker. Even in applying the general rule, however, most cases recognize that the duty to the public can be narrowed to a specific individual if "special circumstances" are proved. The "special circumstances" have not been adequately illustrated by the courts, except that there apparently must be some specific personal contact between the individual and the police.

The cases which have sustained causes of action against police officers may be examples of "special circumstances," but are often factually similar to cases denying causes of action. There is one uniform point; if the facts pleaded are sufficient to allege possible "special circumstances," the existence of a police officer's duty is a jury question. The cases as a whole imply that the pleading must be extensively detailed to assure that the possible "special circumstances" exception has been stated.

The first issue presented is whether State Police Officer Highsmith owed a duty to Margaret Lynn Whitaker not to return a gun to Lawrence E. Murphy where Highsmith knew of Murphy's problem with alcohol; Highsmith knew or should have known that Murphy's condition made him a danger to himself or others when he possessed a gun; and, where Highsmith knew or should have known that Margaret Lynn Whitaker in particular would be placed in danger if the gun was returned to Murphy.

### General Concepts Relative to the Case

Although it is difficult to structure a framework within which to evaluate Highsmith's actions, certain general principles of negligence theory should be mentioned.

The "duty" which is allegedly owed by Highsmith "is a question of whether the defendant is under any obligation for the benefit of the particular [foreseeable] plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk." Prosser, *Handbook of the Law of Torts*, § 53 at 324 (1971). In evaluating what would be "reasonable conduct," Highsmith's knowledge of the facts related to Murphy's prior erratic behavior is relevant. *The Restatement (Second) of Torts*, § 290 comment F (1965), says, "If actor has special knowledge [of qualities and habits of human beings], he is required to utilize it." Such knowledge "is of most obvious importance where the actor's conduct has created a situation . . . which may become dangerous to others .if it is subsequently acted upon . . ." *Id.* at comment i. A final question related to the *Restatement* is whether Highsmith's confiscation of Murphy's gun in November 1980, can be considered "taking charge" of Murphy. "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Id.* at § 319.

### Powers, Duties, Liabilities of Police Officers.

The only Virginia law which may bear directly on Highsmith's duty to the plaintiff is statutory. Under

Virginia Code § 52-8 (1978 Repl. Vol.): "The [State Police] are vested with the powers of a sheriff for the purpose of enforcing all the criminal laws of this State . . . and it shall be the duty of [State Police] to use their best efforts to enforce the same." Therefore, Highsmith was under a statutory duty to prevent any illegal acts by Murphy, and to take action when Murphy violated the law. Unfortunately, there is no Virginia case relevant in this situation which demonstrates the extent to which Highsmith must anticipate illegal acts. However, the facts alleged indicate that Highsmith had personal knowledge of Murphy's previous recklessness with a firearm. This could mean that Highsmith failed to enforce Virginia Code Sections 18.2-56.1(A) and 18.2-282(a) (1982 Repl. Vol.) and failed to fulfill his duty under Virginia Code § 52-8. It is critical to note that Virginia Code § 52-8 is *not* a statutory standard of care, but it does provide a framework within which to view Highsmith's actions.

As Virginia Code § 52-8 indicates, policemen are "guardians of public safety with a clear obligation upon them to enforce the law." Yokley, 2 *Municipal Corporations*, Section 362 at 266 (1957). The issue in the case at bar is whether police officers owe a duty to individual citizens. The law on point is confused. The general rule is that police officers only owe a duty to the public.

> The duty of a law enforcement officer to preserve peace and arrest lawbreakers is one which the officer owes to the public generally, rather than to particular individuals, and the breach of such duty creates no liability on the part of the officer to an individual who is damaged as a result of the officer's failure to perform his duty.

70 Am. Jur. 2d, *Sheriffs, Police and Constables* (footnotes omitted), § 54 at 170 (1973). However, it has also been asserted that "The general rule is that a peace officer is personally liable for negligence or wrongful acts causing injury . . ." McQuillin, *The Law of Municipal Corporations*, 3d ed. § 12 211b at 164 (1979). The confusion is reconciled as follows.

[I]t is well recognized at common law that a law enforcement officer may be held liable to persons injured in consequence of his failure to perform the duties of his office, and it is also settled that one of the duties of a law enforcement officer is to preserve the peace and arrest lawbreakers, it is nevertheless generally held that the specific duty to preserve the peace is one which the officer owes to the public generally, and not to particular individuals, and that the breach of such duty accordingly creates no liability on the part of the officer to an individual who was damaged by the lawbreaker's conduct. Rather, it is held, a law enforcement officer is amenable only to the public and punishable only by indictment for the breach of his duty as conservator of the peace.

Annot., "Personal Liability of Policeman, Sheriff, or Similar Peace Officer or His Bond, for Injury Suffered as a Result of Failure to Enforce Law or Arrest Lawbreaker," 41 A.L.R.3d, 700 at 702 (1972). (Footnotes omitted). *See also* Annot., "Liability of Municipality or other Governmental Unit for Failure to Provide Police Protection," 46 A.L.R.3d 1084 (1972) and Annot., "Personal Liability of Policeman, Sheriff, or Other Peace Officer, or Bond, for Negligently Causing Personal Injury or Death," 60 A.L.R.2d 873 (1958).

The plaintiff in *Whitaker* alleges that Highsmith failed to protect her from Murphy and failed to prevent a breach of peace. It appears from the general sources that the favored rule requires accountability to the public, but not to individuals. The case law demonstrates the complexity of the issue. Under the circumstances, the confusion in the authorities is understandable.

Counsel for Whitaker and counsel for Highsmith have supplied this Court with memos supporting their positions, for which the Court thanks them. I will not repeat the cases and what they say but will supply counsel with the cases this Court used in this opinion. Benway v. City of Watertown, 1 A.D.2d 465, 151 N.Y.S.2d 485 (1957); McCrink v. City of New York, 296 N.Y. 99, 71 N.E.2d 419 (1947); Lubefield v. City of New York, 4 N.Y.2d 455, 151

N.E.2d 862, 176 N.Y.S.2d 302 (1958); Mentillo v. City of Auburn, 2 Misc. 2d 818, 150 N.Y.S.2d 94 (S. Ct. 1956); Mentillo v. County of Cayuga, 2 Misc. 2d 820, 150 N.Y.S.2d 97 (S. Ct. 1956); McAndrew v. Mularchuk, 33 N.J. 172, 162 A.2d 820 (1960); Wuethrich v. Delia, 134 N.J. Super. 400, 341 A.2d 365 (1975); Tompkins v. Kenner Police Dept., 402 So. 2d 276 (La. App. 1981); Underwood v. United States, 356 F.2d 92 (5th Cir. 1966); In re Sabbatino & Co., 150 F.2d 101 (2d Cir. 1945); South v. Maryland, 59 U.S. (18 Howard) 396 (1855); Annal v. McLeod, 122 Mont. 498, 206 P.2d 811 (1949); Commercial Union Insurance Co. v. City of Wichita, 217 Kan. 44, 536 P.2d 54 (1975); Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376 (1969); McGeorge v. City of Phoenix, 117 Ariz. 272, 572 P.2d 100 (1977); Isereau v. Stone, 207 Misc. 938, 140 N.Y.S.2d 582 (1955); Riss v. City of New York, 27 A.D.2d 217, 278 N.Y.S.2d 110 (1967), *aff'd.* 22 N.Y.2d 581, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968); Malerta v. Incorporated Village of Huntington Bay, 78 A.D.2d 898, 433 N.Y.S.2d 215 (1980), *aff'd.* 54 N.Y.2d 863, 444 N.Y.S.2d 903, 429 N.E.2d 410 (1981); Evett v. City of Iverness, 224 So. 2d 365 (Fla. 1969), *cert. dismissed* 232 So. 2d 18 (1970); Fusilier v. Russell, 345 So. 2d 543 (La. App. 1977); Porter v. City of Urbana, 88 Ill. App. 3d 443, 410 N.E.2d 610 (1980); Trujillo v. City of Albuquerque, 93 N.M. 569, 603 P.2d 303 (N.M. App. 1979); Bruttomesso v. Las Vegas Metropolitan Police Department, 591 P.2d 254 (Nev. 1979); Young v. Gossling, 23 Ill. App. 2d 426, 163 N.E.2d 532 (1960).

The Court does not mean to infer that all cases shown above are "on point" with this case, but the above cases may be useful in the future at whatever level this case may finally come to rest.

This Court believes that defendant Highsmith owed a duty to the public generally and to no one individually. This Court does not believe that the plaintiff's pleadings have alleged a "special circumstance" as referred to by some of the cases. This Court relies heavily on the *Massengill* case and *Isereau v. Stone.*

The Court would like to thank counsel for an interesting question and the memos supplied by counsel. I will ask counsel for the defendant to forward an Order sustaining the Demurrer.